LLOYDS CASUALTY INSURER v. I. D. McCRARY ET AL.

No. A-2537. Decided April 12, 1950.
Rehearing overruled May 24, 1950.
(229 S. W., 2d Series, 605.)

*Kemper, Wilson & Schmidt,* of Houston, for appellant, Lloyds Casualty Insurer.

*Adams & Morgan,* of Crockett, *Stone and Stone,* and *Norman, Rounsaville & Hassell,* all of Jacksonville, and *Shook and Shook,* of Dallas, for appellees, McCraryes and Nunnallyes.

MR. JUSTICE HART delivered the opinion of the Court.

■ This case comes to us on a certificate under Rule 461, T. R. C. P., from the Court of Civil Appeals at Texarkana. The following summary of the pertinent facts is taken from the certificate, the tentative opinion of the Court of Civil Appeals, and the transcript. We have not taken into consideration any additional or different facts which may appear in the statement of facts, since it is not our practice to do so in answering certified questions. Renfro Drug Co. v. Lawson, 138 Texas 434, 160 S. W. 2d 246; Employers Lia. Assurance Co. v. Young County Lumber Co., 122 Texas 647, 64 S. W. 2d 339; Scott v. Gardner, 137 Texas 628, 156 S. W. 2d 513, 141 A. L. R. 50.

Lloyds Causualty Insurer issued to Ed Grimes, doing business as Crockett Butane Gas Service, in Crockett, Houston County, a "Manufacturers and Contractors Policy" of liability insurance. During the policy period, Ed Grimes and his son, J. N. Grimes, who was his partner in the business known as Crockett Butane Gas Service, installed a butane gas system in a house belonging to I. D. McCrary and rented to M. D. Nulnally, near Jacksonville, Cherokee County. The installation was not completed in that the pressure gauge, valves and fittings on the butane gas stove tanks did not operate properly, and J. N. Grimes knew of these defects and intended to complete the installation at a later date by repairing or exchanging the defective apparatus. Before the defect was corrected, a leak in the butane gas system caused a fire which destroyed McCrary's house and Nunnally's household goods. They sued Ed Grimes and J. N. Grimes for their property damage, and the Grimes notified the insurer, which refused to defend the suit. Judgment was recovered by McCrary and Nunnally against the Grimeses, but execution was returned nulla bona, and McCrary and Nunnally then sued the insurer to recover the amount of their judgment. The Grimeses intervened, asserting that the insurer was liable to them for the expenses of defending the damage suit. The insurer filed a plea of privilege, and controverting pleas were filed by the plaintiffs and interveners on the ground that venue lay in Cherokee County under Subdivision 23 of Article 1995, V. A. C. S. After hearing evidence, the district court overruled the plea of privilege. Upon appeal, the Court of Civil Appeals first wrote an opinion reversing the judgment of the district court, but on the motion of the appellees, certified to us three questions. Since our holding on the first question makes it unnecessary to answer the other questions, we quote only the first question:

"Question No. 1:

Did this court err in holding that, under the provisions of the insurance policy above set out unaided by Sec. 11, Art. 6053, Vernon's Annotated Texas Statutes, no cause of action against appellant, the insurance carrier, was shown?"

■ All parties concede that the burden rested on the plaintiffs and the interveners to show a cause of action against the insurer to maintain venue in the county where the suit was filed, under Subdivision 23 of Article 1995. Victoria Bank & Trust Co. v. Monteith, 138 Texas 216, 158 S. W. 2d 63. The grounds on which the insurer contends that no cause of action against it was shown are first, that the policy did not cover the accident causing the damage; and, second, that the policy covered only Ed Grimes individually and therefore did not cover the partnership composed of Ed Grimes and his son, J. N. Grimes, against whom the judgment was recovered in the damage suit.

With regard to the question of coverage, the following portions of the policy are pertinent:

"Declarations                    Schedule Manufacturers and Contractors Policy

Item 1.  Name of insured    Ed Grimes, dba Crockett Butane Gas Service

         Address            2nd Street    Crockett    Houston    Texas
                            (No.  Street     Town       County    State)

         Location of premises      same

         Interest of named insurer in premises      Owner

                                    Part occupied by
                                    named insurer      All

         The business of the named insured is     Butane Gas Dealer

         *   *   *

Item 3   The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division thereunder shall be as stated herein, subject to all of the terms of this policy having reference thereto.

THE LETTER "X" APPEARING IN THE "NO INSURANCE" COLUMN SHALL MEAN THAT NO INSURANCE IS AFFORDED WITH RESPECT TO THE HAZARD STATED IN THE DIVISION OPPOSITE THERETO.

         *   *   *

| Coverage | Division | Hazards | No Insurance | |
|---|---|---|---|---|
| **B.** Property Damage Liability | 1. | Premises-Operations | | $5,000.00 each accident |
| | 2. | Elevators | X | |
| | 3. | Independent Contractors | X | $10,000.00  aggregate |
| | 4. | Products | X | (aggregate applies to Div. 1, 3, 4 and 5 only) |
| | 5. | Contractual | X | |

| Purpose of Use | Premium Bases | RATES Coverage A | RATES Coverage B | Advance Premiums Coverage A | Advance Premiums Coverage B |
|---|---|---|---|---|---|
| **1. Premises-Operations** Code No. 8350-Butane Gas Operations including gasoline, fuel oil, mixing or blending | (a) Remuneration (b) Area of Premises $5,000.00 | (a) Per $100 of Remuneration (b) Per 100 Sq. Ft. Area .26 | .56 | $27.50 | $56.25 |

\* \* \*

Minimum Premiums    Total Advance Premium (A) $27.50 (B) $56.25
Div. 1    Div. 2    Div. 3

Coverage A   $27.50
Coverage B   $56.25              Total Advance Premium for the Policy $83.75"

## "LLOYDS CASUALTY INSURER

(A Lloyds insurance company, herein called the company)

## HOUSTON, TEXAS

"Does hereby agree with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and of the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## Insuring Agreements

"I. * * * COVERAGE B-PROPERTY DAMAGE LIABILITY— To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

## Definition of Hazards

"Division 1. Premises-Operations. The ownership, maintenance

or use of the premises, and all operations during the policy period which are necessary or incidental thereto.

\* \* \*

"Division 4. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured, except equipment of other property rented to or located for the use of others but not sold; and operations covered under divisions 1 and 3 of the Definition of Hazards, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises."

\* \* \*

## Exclusions

"THIS POLICY DOES NOT APPLY:

(a) under division 1 of the Definition of Hazards, to:

    (3) operations, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured;

\* \* \*

(c) under divisions 1 and 4 of the Definition of Hazards, to the ownership or maintenance of signs, or to machinery, equipment or other property rented to or located for use by others, or to operations in connection therewith, away from the premises, unless such property is specifically declared and described in this policy and premium charged therefor;

(d) under divisions 1 and 3 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under division 4 of the Definition of Hazards; or to operations on or from other premises which are owned, rented or controlled by the insured;

## Conditions

\* \* \*

"3. PREMISES DEFINED

The unqualified word 'premises' whenever used in this policy shall mean (a) the premises designated in the declarations including buildings and structures thereon and the ways immediately adjoining and (b) when a territory is designated in the declarations in addition to a specific location, places within said territory while used by or on behalf of the named insured, except public ways used in common with others.

\*   \*   \*

"10. ACTION AGAINST COMPANY
No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company.

"Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

■   The insurer first denies the existence of coverage on the ground that the accident did not occur on the premises named in the declarations in the policy but at a distant location in a different city and county, citing Axt v. London & Lancashire Indemnity Co., 7 Cir. 131 Fed. 2d 370; Hultquist v. Novak, 202 Minn. 352, 278 N. W. 524, and similar cases. The policy in this case, however, does not clearly so limit the coverage, but in somewhat ambiguous language defines the hazard as including not only "the ownership, maintenance or use of the premises", but also "all operations during the policy period which are necessary or incidental thereto." It appearing from the declarations that the business of the insured was "Butane Gas Dealer" and that the purpose of the use of the premises was "Butane Gas

Operation," the policy may be fairly and reasonably constructed to mean that it covers all operations, whether on the premises or elsewhere, which are necessary or incidental to the declared use of the premises, and that such operations include the installation of butane gas equipment at places other than the premises named in the policy.

■ We find no cases discussing the exact point before us, but in Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 175 Fed. 2d 597, it was held without discussion of this point that a "Premises-Operations" clause like the one in this case covered the operations of installing a butane gas system away from the insured's place of business. In the absence of a clear limitation of coverage to operations taking place on the named premises, we are of the opinion that coverage should not be so limited, because this is an appropriate case for the application of the rule that ambiguous terms of an insurance policy should be construed in favor of the insured where they are reasonably susceptible of such a construction. McCaleb v. Continental Casualty Co., 132 Texas 65, 116 S. W. 2d 679; Davis v. National Casualty Co., 142 Texas 29, 175 S. W. 2d 957; Protane Corporation v. Travelers Indemnity Co., 343 Pa. 189, 22 Atl. 2d 674; 45 C. J. S. "Insurance", s. 828.

■ The insurer further contends that even if the policy covers operations away from the named premises, it does not apply here because the operations had been completed or abandoned and therefore the accident was one which could be covered only by "Division 4-Products." The definition of the "Products" hazard in the policy has been quoted above, and we have also quoted the provision under the heading of "Exclusions" to the effect that the policy does not apply under Division 1 ("Premises-Operations") to liability for which protection could be afforded under Division 4 ("Products"). By its term, the "Products" coverage applies where the accident occurs after the insured's operations have been completed or abandoned at the place of the accident. However, the "Products" coverage is rendered inapplicable by the fact which was alleged by the plaintiffs and found by the trial court in the damage suit and cited in the certificate of the Court of Civil Appeals, that J. N. Grimes, prior to the accident, had not completed the installation and intended to make changes in some of the connections so that the butane gas system would operate properly. It is true that the operations had been interrupted, but since they had not been completed or abandoned, the "Premises-Operations" coverage still applies.

A similar situation existed in Boutwell v. Employers' Liability Assurance Corp., 5 Cir. 175 F. 2d 597, where the court held that the "Premises-Operations" coverage applied. In that case the insured's employees had improperly connected a gas heater, but had left the premises at the time of the accident, intending to return and complete the installation the next day. In the present case the interval of time between Grimes's leaving the plaintiffs' premises and the occurrence of the accident was several days, but we do not believe that this is a material difference so long as Grimes actually intended to return and complete the installation. Of course, if Grimes had completed or abandoned the installation, a different situation would be presented, but since these facts were not found to exist in this case, decisions such as Berger Bros. Electric Motors, Inc., v. New Amsterdam Casualty Co., 293 N. Y. 523, 58 N. E. 2d 717, 156 A. L. R. 1281; Baker v. Maryland Casualty Co., 73 R. I. 411, 56 Atl. 2d 920 and Standard Accident Insurance Co. v. Roberts, 8 Cir., 132 Fed. 2d 794 are not in point.

■ The insurer also contends that it is not liable because the policy was issued to Ed Grimes and the operations were conducted by the partnership of Ed Grimes and J. N. Grimes and the judgment in the damage suit was obtained against that partnership, citing Traders & General Insurance Co. v. Stubbs, Tex. Civ. App., 91 S. W. 2d 407, writ refused ,and similar cases. However, the policy contains the following paragraph under the "Definition of Hazards":

"III. DEFINITION OF "INSURED"

‑‑ The unqualified word 'insured' whenever used includes not only the named insured but also any partner, executive officer or director thereof while acting within the scope of his duties as such."

We find nothing in the policy relating to the coverage asserted by the appellees which limits it to the "named insured"; in fact, the insuring agreement regarding property damage liability expressly provides that the insurer will pay on behalf of "the insured" all sums which "the insured" shall be required to pay because of liability imposed on him by law. Furthermore, in the paragraph relating to actions against the company, it is provided that a person who had obtained a judgment against "the insured" shall be entitled to recover under the terms of the policy in the same manner and to the same extent as "the insured." These provisions control this case, and the existence of other provisions where coverage is given only in favor of the "named insured" are irrelevant for our present purposes.

Our conclusion being that, independent of the aid of any statutory provisions, a cause of action against the insurance carrier was shown, we answer Question No. 1 "Yes." The other questions are not answered because in view of our answer to Question No. 1 they become immaterial. City of Amarillo v. Stapf, 129 Texas 81, 101 S. W. 2d 229; Hurt v. Cooper, 130 Texas 433, 110 S. W. 2d 896; Howell v. Howell, 147 Texas 14, 210 S. W. 2d 978.

Opinion delivered April 12, 1950.

Rehearing overruled May 24, 1950.