**EMPLOYERS MUT. CAS. CO. v. HEFNER.**

No. 14552.

Court of Civil Appeals of Texas. Dallas.

Dec. 19, 1952.

Rehearing Denied Jan. 30, 1953.

John N. Touchstone and George C. Cochran, both of Dallas, for appellant.

Leachman, Matthews & Gardere and Henry D. Akin, all of Dallas, for appellee.

YOUNG, Justice.

Suit herein was filed by appellee John M. Hefner, Sr., seeking recovery upon a certain contractor's liability policy allegedly insuring the operations of Spencer Plumbing Company. The claim was in sum of $2,000, interest and costs, based upon an unpaid judgment in like amount already obtained against Spencer Plumbing Company. A trial to the court resulted in judgment for $2,000, interest and costs against appellant, as sole defendant, with timely appeal by the Casualty Company; the parties concerned being here designated as in the trial court. .

Source of the litigation was a gas explosion occurring on January 12, 1948 in a two-story building located at 419 North Ervay Street, Dallas, owned by plaintiff. Property damage sustained by the blast resulted in a suit against Spencer Plumbing Company, a partnership, under allegations that such explosion was caused by negligence of the plumbing company in installing and turning the gas into a leaky and unsealed temporary gas line in connection with the performance of an unfinished contract to equip plaintiff's building with a system of air conditioning, heating and plumbing. As already stated, the prior suit resulted in a judgment for plaintiff against the plumbing company in principal sum of $2,000; the present action seeking to collect such judgment from the Casualty Company because of insurance which such defendant had issued, under claim that the policy in question was one of contractor's liability insurance, obligating defendant to pay all damages imposed by law from the hazards of insured's plumbing business operations, including, as plaintiff alleged, the judgment obtained in said earlier suit.

The policy in controversy was issued by the John M. Hefner Agency (owned by plaintiff) and it developed on trial that the same had been lost or mislaid; the parties relying for evidence thereof, in material part, upon the contents of defendant's amended original answer. Plaintiff contends, on the one hand, that these insuring provisions establish liability, defendant just as strongly arguing to the contrary; plaintiff claiming coverage under "Division 1. Premises—Operations," quoted below, for which premium was paid; defendant classifying the explosion as within "Division 3. Products," not covered by premium; the provisions relied on by each being now set forth and emphasized for purpose of clarity: "II. Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined. Definition of Hazards Division 1. Premises—Operations. The ownership, maintenance or use of the premises, *and all operations during the policy period which are necessary or incidental thereto.* Division 2. Elevators. The ownership, maintenance or use, for the purposes stated in the declarations, of any elevator therein designated. Division 3. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, *if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned,* rented or controlled by the insured; and *operations*

*covered* under *divisions 1* and 6 of the Definition of Hazards, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises. (Emphasis ours.) * * * This Policy does not apply: (a) under division 1 of the Definition of Hazards, to aircraft; or to elevators at the premises owned, rented or controlled by the insured; or to dogs, draft or saddle animals, boats, vehicles of any kind other than hand trucks, push carts, bicycles and contractors' equipment, or the *loading* or *unloading* thereof, *while away from the premises,* unless specifically declared and described in this policy and premium charged therefor; or to liability with respect to which insurance is or can be afforded under division 6 of the Definition of Hazards; or if the operations be rated in the Declarations on any basis other than remuneration, to structural alterations, new construction or demolition operations; * * * (c) under divisions 1 and 3 of the Definition of Hazards, to the ownership or maintenance of signs away from the premises, or to machinery, equipment or other property rented to or located for use by others, or to operations in connection therewith, away from the premises, unless such property is specifically declared and described in this policy and premium charged therefor; (d) under divisions 1 and 6 of the Definition of Hazards, to liability with respect to which insurance is or can be afforded under division 3 of the Definition of Hazards; or to operation on or from other premises which are owned, rented or controlled by the insured; (e) under divisions 1, 2, 4 and 6 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement, or under division 3 to liability of others assumed by the insured under any contract or agreement; * * *. 3. Premises Defined. *The unqualified word 'premises' wherever used in this policy shall mean (a) the premises designated in the declarations including buildings and structures thereon and the ways immediately adjoining* and (b) when a territory is designated in the declarations in addition to a specific location, places within said territory while used by or on behalf of the named insured in the conduct of the operation at such specified location, except public ways used in common with others." (Emphasis ours.)

Appellant's points of error may be stated, viz.: (1) "There being no evidence in the record that the explosion which damaged plaintiff's building was within the coverage of the policy, the judgment of the court below was, therefore, erroneous"; and (2) in the alternative, that the evidence was *insufficient* to support a finding thereon. The contentions made require a rather detailed analysis of the facts surrounding the explosion of January 12, 1948 as narrated by plaintiff's witnesses, Ray Delbert Wright and J. W. Hefner, Jr.; the controlling issue here being this: Of whether the explosion (and liability, if any) arose under Division 1 covering "* * * all operations during the policy period which are necessary and incidental" to the use of the premises, or whether the occurrence and damage was referable to Division 3—Products Liability— (not covered) which related to accidents occurring after such operations had been completed or abandoned.

In January 1948, Wright was a partner of Henry Spencer in the Spencer Plumbing Company, which concern for six or eight months prior thereto had been installing air conditioning and heating units in a penthouse on top of the two-story Hefner Insurance Building; completion of the contract being dependent on arrival of a necessary boiler. Material here, Wright testified that the building owner (Hefner) had arranged for tenant occupancy of said second floor by middle of January on Spencer's assurance that the heating equipment would be ready for service; and on account of the delayed boiler, Hefner had insisted to Spencer that some method of temporary heating be availed of and that Spencer Plumbing Company thereupon provided temporary facilities for heat as follows: The heating unit later to be attached to ceiling of room under the contract, was on

hand; Spencer simply causing it to be uncrated, attaching thereto some 25 feet of copper pipe which was run along the floor and hooked up to an adjacent hot water heater. (The Monday morning explosion apparently resulted from a leaky connection in the temporary gas line thus located.) According to Wright, this arrangement for temporary heating had nothing to do with Spencer's main contract for installation of permanent heat and air conditioning and was at Hefner's suggestion; it being implied that the heat unit would later be unhooked and attached to the ceiling. Testimony of J. W. Hefner, Jr., touching above incident differed in some respects from that of Wright, though generally corroborative. It was Spencer's idea, he stated, that the particular unit was made use of for temporary heat; installed by Spencer at insistence of Hefner, Sr., so that tenants could move into the building over the weekend; that the temporary unit and the gas line were to be taken out upon permanent installation of equipment in the penthouse; and that the general contract was unfinished on January 12,—for if it had been completed there would have been no occasion for the temporary arrangement. There were statements of a somewhat contradictory nature made by each witness; from Wright, that it was not part of his duty under the contract to disconnect the temporary equipment; and from Hefner, that the heating unit in question was merely *loaned* to the latter and was not to be used in the contemplated permanent installation.

It may be assumed that the declared business of Spencer Plumbing Company, insured, was inclusive of heating and air conditioning operations, and admittedly the Hefner-Plumbing Company contract had not been completed at time of the explosion. Likewise, it appears from testimony somewhat in conflict that the trial court was warranted in finding that the furnishing of temporary heat was but incidental to the principal contract, and not in itself a completed and independent transaction; Wright testifying that the heat unit had been temporarily installed to be removed at a later date; Hefner, that the heater in question was not to be used in connection with the principal contract, but to be removed by Spencer. In either event, the operation was one well within terms of Division 1 of the policy for which premium had been paid. In Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 229 S.W.2d 605, 609, identical provisions of a contractor's liability policy were involved (insured, a butane gas dealer), and the conclusions there reached are in essence controlling of the instant facts. Division 1 (Premises—Operations) of such a policy, the court says "may be fairly and reasonably construed to mean that it covers all operations, whether on the premises or elsewhere, which are necessary or incidental to the declared use of the premises, and that such operations include the installation of butane gas equipment at places other than the premises named in the policy"; Division 3—Products, on the other hand covering an accident after the insured's operations have been completed or abandoned; Lloyds Casualty v. McCrary, supra; and hence inapplicable here.

Neither does paragraph (c) under heading "This Policy does not apply," have any bearing on the present case; such clause obviously being designed to exclude damages arising from a third party's use of insured's machinery or equipment; in other words, "property rented to or located for use by others." It is significant that exclusion (c) was also a part of the policy under construction in Lloyds Casualty Insurer v. McCrary, appellant there making no contention that it was in any wise applicable as a defense.

In harmony with the conclusions hereinabove reached, appellant's points are severally overruled and judgment of the trial court affirmed.