**RELIANCE UNIVERSAL, INC., Appellant,**

v.

**I. C. S. CORPORATION, Appellee.**

No. 17077.

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 27, 1970.

Rehearing Denied April 3, 1970.

Shannon, Gracey, Ratliff & Miller, and Kleber C. Miller, Fort Worth, for appellant.

Crumley, Murphy & Shrull, and William M. Murphy, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is a venue matter. Suit was filed in Tarrant County. Defendant, a corporation, filed a plea of privilege seeking to have the case transferred to Harris County where it had its principal place of business. The trial court overruled the plea of privilege and defendant has appealed.

Plaintiff's petition alleged that between January, 1967 and June, 1967, plaintiff and defendant made numerous contracts whereby defendant sold to plaintiff over 17,000 gallons of paint to be used in painting the insides of pipelines located in Colorado and Wyoming. It alleged that in connection with such contracts there were two warranties made by defendant, namely: (1) Defendant's employees expressly warranted that the paint was suitable for the purpose for which it was intended, and (2) there existed an implied warranty that the paint was suitable for the purpose for which it was intended. It alleged that the paint was in fact defective and not suitable for the purposes for which it was intended. The sale of such defective paint to plaintiff by defendant constituted a breach of both the implied and express warranties and resulted in great damage to plaintiff, for which plaintiff sued.

In the alternative, plaintiff alleged that defendant was negligent in compounding and developing such paint and that this negligence proximately caused great damage to plaintiff.

Plaintiff contended at the hearing and in its controverting plea that venue was properly in Tarrant County because of Section 23 of Art. 1995, Vernon's Ann. Civ.St., which provides: " * * * Suits against a private corporation, * * * may be brought in the county in which its principal office is situated; or in the county in which the cause of action or part thereof arose; * * *."

In order for plaintiff to successfully maintain venue of this case in Tarrant County under that venue provision it was necessary for it to plead and prove that it had a cause of action against the corporate defendant. See Jones v. Philco Distributors, Inc., 416 S.W.2d 611 (Fort Worth, Tex.Civ.App., 1967, no writ hist.), and Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 229 S.W.2d 605 (1950).

■ In addition to that it was necessary for plaintiff at the venue hearing to plead and prove by a preponderance of the evidence that part of the transaction which creates the right or involves the breach, or both, occurred in the county where venue is sought to be maintained. McDonald Texas Civil Practice, Vol. 1, Venue, Sec. 4.30.2, page 519, and cases there cited.

A cause of action for a breach of contract consists of two elements, namely, (1) the contract itself, and (2) the breach thereof by defendant. Panther Oil & Grease Mfg. Co. v. Schumaker, 166 S.W. 2d 205 (Galveston, Tex.Civ.App., 1942, no writ hist.).

The record here is undisputed that the paint in question was by defendant shipped to and delivered to plaintiff in the states of Colorado and Wyoming. The paint was applied to pipelines in those states and any damage complained of was sustained in those two states.

Defendant's point 4 is that the plea of privilege was erroneously overruled because there is no evidence and insufficient evidence to show that the cause of action sued on or a part thereof arose in Tarrant County.

The evidence in the record shows that as a result of the dealings of plaintiff and defendant with each other between December 15, 1965, and the time the purchases were made in the first half of 1967 of the paint used in the Wyoming and Colorado jobs in question that the price defendant was offering to sell this paint to plaintiff for had become well established at $6.20 per gallon.

It was also established that defendant's prices generally included having defendant prepay the freight. So when a new job was obtained by I. C. S., its employees would call defendant prior to ordering any paint for this new job to determine whether there would be any difference in price as a result of the paint being shipped to a different place.

In each instance where defendant had sold to plaintiff the particular type paint in question from the time their dealings first started in December, 1965, and continuing through July, 1967, the price defendant charged plaintiff per gallon for this particular paint was always the same —$6.20 per gallon. And this was true regardless of the destination to which such paint was shipped.

The evidence showed that the particular paint used in the Wyoming and Colorado jobs was sold to plaintiff by defendant as a result of a number of different purchase orders for this paint being placed with defendant by plaintiff during the period starting early in 1967 and ending in July, 1967.

The evidence showed that some of these orders would be phoned in to the defendant's plant in Houston. Others would be placed by a note being handed to them in Houston by an I. C. S. representative, and still others were placed by I. C. S. making out and executing a purchase order in Arlington (Tarrant County) and mailing it to defendant in Houston. But in every instance where an order of any type was placed by I. C. S. the defendant insisted and required that a written purchase order be prepared by I. C. S. and sent to them in Houston. Such purchase orders would be prepared in Tarrant County.

Prior to the sale by defendant to plaintiff of any of the paint used in the Wyoming and Colorado jobs in question, there were two meetings held between officials of the plaintiff and defendant companies.

Defendant company's business was that of manufacturing and marketing industrial paints, including a paint used as a coating for the inside of pipelines.

Plaintiff company's business was that of painting the inside of in-service pipelines.

Defendant's letter of December 15, 1965, from its president to plaintiff I. C. S. makes it obvious that defendant was quite desirous of selling its internal pipe coating paint to I. C. S. to be used by it in connection with its business.

One of the meetings between officials of the two companies was held at a bank in Fredericksburg. I. C. S. had gotten behind on its account with defendant and owed defendant money. Defendant at that time would not sell plaintiff any further paint unless plaintiff furnished defendant with an irrevocable letter of credit from a bank

guaranteeing that defendant would be paid for such paint. The purpose of this gathering of the officers at this bank was for defendant to inform plaintiff of the terms on which they would be sold paint for use in the Wyoming and Colorado jobs. Plaintiff's credit had been cut off. At this meeting the Fredericksburg bank furnished defendant with an irrevocable letter of credit guaranteeing to pay for up to $70,000 worth of paint to be ordered from defendant by plaintiff for the Wyoming and Colorado jobs. This was all done before any paint at all was purchased for these contracts. This met the defendant's requirement and cleared the road for plaintiff to order paint from defendant.

The other meeting between officials of the two companies was held at Arlington. It involved a discussion of the Wyoming and Colorado jobs that I. C. S. had gotten and of problems related to such jobs.

We are of the opinion that there was sufficient evidence to justify the trial judge in concluding the following: (1) that after the letter of credit required by defendant was obtained by plaintiff and after the parties decided to have the additive added at defendant's plant instead of at the job site, that there existed a running or open offer from defendant to sell to plaintiff for use on its Colorado and Wyoming jobs defendant's EP–2300 and EP–2301 paints, with additive added in the amount agreed on between the parties, for a price of $6.20 per gallon; and (2) that when plaintiff thereafter filled out its various written purchase orders in Tarrant County and executed them in Tarrant County, and mailed them to defendant in Houston, the various contracts were consummated in Tarrant County. It appears that there is no question but what this would be true as to at least some of the orders that were placed for paint that was used in the Colorado and Wyoming jobs. It follows that the trial judge correctly concluded that a part of the cause of action sued on arose in Tarrant County.

This is true because a contract is held to have been made at the place or in the county where the offeror's offer is accepted by the other contracting party. The acceptance is accomplished at the place where the last act necessary to give it validity is done. Rotex Manufacturing Co. v. Little Dude Trailer Co., 416 S.W.2d 511 (Fort Worth, Tex.Civ.App., 1967, no writ hist.) and Woodman v. Bishop, 203 S.W.2d 977 (San Antonio, Tex.Civ.App., 1947, no writ hist.).

Under the facts of this case we believe that the last act necessary to give validity to the contracts to buy paint in each instance was the execution of the purchase order by I. C. S. and it was done in each instance in Tarrant County.

The contract itself is an essential part of a cause of action for damages for the breach of such contract. In a suit for damages for breach of contract it follows that a part of the cause of action involved arose in the county where the contract is consummated. It is generally held that the contract is made in the county where the offer is accepted and not in the county where such offer originated. Mercantile Securities Co. v. Taylor, 60 S.W.2d 1059 (Fort Worth, Tex.Civ.App., 1933, no writ hist.).

Proof that the contract is question was made in Tarrant County meets the requirement that proof in such case must be made that a part of the cause of action arose in such county. Panther Oil & Grease Mfg. Co. v. Schumaker, supra.

Defendant's point that there is no evidence and insufficient evidence to show that the cause of action sued on or a part thereof arose in Tarrant County is overruled.

By defendant's first and second points it contends that the plea of privilege was erroneously overruled because there is both no evidence and insufficient evidence to show that defendant breached

either an express or implied warranty as contended by the plaintiff.

The record here shows that defendant's technical director, Hinden, represented to plaintiff's officials that defendant's paint product in question, with the additive added, was reasonably suitable to the procedure plaintiff was using to coat the pipelines in question. Hinden admitted this fact himself.

The evidence further shows that defendant's employees and its officials were fully aware of the particular purpose for which plaintiff was buying the paint. There was also evidence that plaintiff was relying rather heavily on the skill, know-how and judgment of defendant's employees to select suitable paints fit for the use for which they were bought.

Under this record there was sufficient evidence for the trial court to find that an express warranty was made as pleaded by plaintiff.

The evidence was also sufficient to authorize the trial court to find that defendant impliedly warranted its product in question as alleged by plaintiff. See 50 Tex.Jur.2d, Sales, Secs. 256 and 257.

The question remaining to be discussed here is whether or not on the venue hearing plaintiff proved by a preponderance of the evidence that there had been a breach of either the express or the implied warranty.

Plaintiff had alleged that such warranties had been breached by defendant by selling plaintiff defective paint for use in the jobs in question.

To satisfy the requirement of proving a breach in this respect it was necessary for plaintiff to prove that the paint in question was defective at the time defendant turned it over to plaintiff. See Jones v. Philco Distributors, Inc., supra.

Both parties admit that there is no direct evidence in this case to prove that a defect existed in the paint in question at the time defendant parted with it.

The plaintiff contends, however, that there was ample circumstantial evidence offered at the hearing to justify the trial judge in concluding that the defendant sold plaintiff defective paint for use in the job in question.

The trier of facts is entitled to consider circumstantial evidence in determining a venue question. See Nunneley v. Weiler, 244 S.W.2d 707 (Fort Worth, Tex.Civ.App., 1951, no writ hist.).

The trial judge did not file findings of fact or conclusions of law in this case. This being true the appellate court must presume that the trial judge found all necessary facts raised by the pleadings and evidence in support of the judgment. The appellate court must also, in considering the appeal, view the evidence in the light most favorable to appellees. Nunneley v. Weiler, supra.

It is settled that when an appellate court is confronted with determining the question of whether or not there is any evidence to support the trial court's decree overruling a plea of privilege, it must consider only the evidence that is favorable to the trial court's ruling and disregard entirely that which is opposed to it. See Skidmore v. Finley, 396 S.W.2d 952 (Dallas, Tex.Civ. App., 1965, no writ hist.).

The same rule has been held applicable where the question being considered on appeal is whether the evidence was sufficient to support the trial court's ruling at the plea of privilege hearing. Heldt Bros. Trucks v. McCollum, 293 S.W.2d 214 (San Antonio, Tex.Civ.App., 1956, no writ hist.); and Dunn v. Johnson, 274 S.W.2d 108 (Waco, Tex.Civ.App., 1954, no writ hist.); and Kirby Lumber Corporation v. Treadway, 382 S.W.2d 316 (Beaumont, Tex.Civ. App., 1964, dismissed).

When these rules are followed, a study of all the evidence presented to the trial court at the venue hearing leads us to the conclusion that when such evidence is viewed in the light most favorable to plaintiff, that

such evidence was sufficient to support the trial court's implied finding that the paint in question was defective at the time it left defendant's hands.

A case similar to the one at bar involving the sufficiency of the evidence is Parks v. Glidden Company, 433 S.W.2d 445 (Texarkana, Tex.Civ.App., 1968, ref. n. r. e.).

Defendant's points of error are all overruled and the trial court's decree is affirmed.

## ON MOTION FOR REHEARING

Appellant contends in its motion for rehearing that this Court erred in overruling the two "insufficient evidence" points raised in its first and second points of error, in that we held that in passing on such points that the Court of Civil Appeals must consider only the evidence that is favorable to the trial court's ruling and disregard entirely that which is opposed to it.

We cited three cases in the original opinion as authority for the proposition that such test is the one to be applied in making the determination in question.

Appellant says that the proper test to be applied in such cases is announced by the court in Aerial Sprayers, Inc. v. King, 317 S.W.2d 602 (Amarillo, Tex.Civ.App., 1958, no writ hist.). The test laid down by that court to determine a question of the insufficiency of the evidence to support the trial court's implied finding is for the Court of Civil Appeals to weigh and consider not only that evidence which supports the trial court's implied findings but also that evidence which does not.

We hold that when such a test is applied to the evidence in this case that there was sufficient evidence to support all of the trial court's findings that are here complained of by appellant.

We have considered all matters discussed by appellant in its motion for rehearing and overrule such motion.

We also deny appellant's request that we file additional findings of fact, believing that the case of City of Beaumont v. Graham, 441 S.W.2d 829 (Tex.Sup., 1969) is authority for such ruling.