### Edgar G. DAILEY
v.
### TRANSITRON OVERSEAS CORPORATION.
#### Civ. A. No. 70-L-56.

United States District Court,
S. D. Texas,
Laredo Division.
June 27, 1972.

J. G. Hornberger, Laredo, Tex., for plaintiff.

H. C. Hall, III, Hall & Zaffirini, Laredo, Tex., for defendant.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This diversity suit, 28 U.S.C. § 1331, was brought by the Plaintiff to recover damages for the wrongful breach of an employment contract. The Defendant filed a motion for summary judgment, based upon its contention that under applicable Mexican law Plaintiff's cause of action was barred by limitation. This motion was carried with the case. The questions as to whether Plaintiff was wrongfully discharged and, if so, what was the amount of Plaintiff's damages were tried to a jury, and it found the Plaintiff had been wrongfully discharged and assessed damages in the amount of Thirty-four Thousand Five Hundred Seventy-nine and 99/100 Dollars ($34,579.99).

The effectiveness of the jury verdict and of Plaintiff's right to recover the damages depend upon whether Texas or Mexican law is to be applied to the contract. So, before a final judgment can be entered in this cause, the Court must rule on the motion for summary judgment. In support of such motion, Defendant furnished the Court a translation of the Mexican New Federal Labor Code and an affidavit regarding it, made by a licensed Mexican attorney. If Mexican law applies, Plaintiff's cause of action against Transitron Overseas Corporation for its violation in terminating his contract is barred by limitation. Plaintiff opposes the motion for summary judgment, contending that the Mexican law is not applicable, but Texas law is. If the Texas law applies, Plaintiff is entitled to his judgment and the Court will direct that execution issue.

Since this is a diversity suit, we must look to the Texas rules concerning conflict of laws to resolve this problem. Klaxon Company v. Stentor Elec. Mfg. Company, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Texas generally follows the rule that the validity of contracts is controlled by the law of the place where the contract was made, but that rule will not be applied "when to enforce a foreign contract, according to the provisions of foreign laws, will contravene some established rule of public policy of the state of the forum." King v. Bruce, 145 Tex. 647, 201 S.W.2d 803 (1947). The Fifth Circuit in Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (5 Cir., 1970), has interpreted Texas law as saying that a contract executed in Texas but to be performed wholly outside the state is governed by the law of the place of performance. See Edward E. Morgan Company v. United States for the Use and Benefit of Pelphrey, 230 F.2d 896 (5 Cir., 1956). But, if the contract is only partially performable outside this state, Texas would apply its own law, under the doctrine of lex loci contractus. Hatchett v. Williams, 437 S.W.2d 334 (Tex.Civ.App.1968), n. r. e. In some instances, the law intended by the parties will be controlling, and particularly, in the absence of a contrary manifestation, the presumption is the parties' contract with reference to the law of the place where the contract was made. Austin Building Company v. National Union Fire Ins. Co., 432 S.W.2d 697 (Tex. 1968). Texas law defines the place of making of a contract as the place where the last act necessary to complete the contract is done. Reliance Universal, Inc. v. I. C. S. Corp., 452 S.W.2d 926 (Tex.Civ.App.1970); Rotex Mfg. Co. v. Little Dude Trailer Co., 416 S.W.2d 511 (Tex.Civ.App.1967).

Having set forth the general rules of law with which we must deal, some rather puzzling facts must be reviewed. To begin with, Plaintiff, a graduate engineer, was employed in the State of California. He was approached there by officials of Defendant, or one of its affiliates, about coming to work for it. In late January, 1969, Plaintiff made a brief trip to Texas. After the terms of employment were arrived at, a confirma-

tion of Defendant's offer of employment was contained in a letter dated February 3, 1969, written on stationery of Transitron Mexicana, S.A., headquartered in Nuevo Laredo, Mexico, and signed by John Zimmerman, General Manager. It was received by Plaintiff in Whittier, California. Before delivery of the letter to Plaintiff, it was initialed, according to oral testimony, by James L. Von Horz, who was an official in Transitron's headquarters office in Massachusetts. This confirmation letter acknowledges Plaintiff was offered employment as "Engineering Manager of the Nuevo Laredo plant of Transitron Mexicana, S.A., for three years at $23,000.00 per year." The only contingency was Plaintiff's compliance with a "pre-employment physical examination" to be given him by the company doctor in Laredo, Texas.

After receipt of such confirmation of February 3, 1969, Plaintiff made his second trip to Laredo, Texas, took and passed such physical examination, and, without accepting the offer in writing, set about his duties, the exact date being uncertain. If the successful completion of the physical examination in Texas constituted an acceptance of the offer confirmed by letter dated February 3, both parties were obligated under the terms of a contract made in Texas and which was, by the terms of the confirming letter, to be at least substantially performed in Mexico; but, this approach would require the Court to completely ignore a written employment contract dated April 17, 1969, signed by Plaintiff and on behalf of Transitron Overseas Corporation, Laredo, Texas, office, by the same John Zimmerman, as General Manager.

However, well before the signing of the April 17th contract, Plaintiff had established residence in Laredo, Texas, and was at work in the plant of Transitron Mexicana, S.A., in Nuevo Laredo, Mexico, the Mexican subsidiary of the parent company, Transitron Electronic Corporation. This Mexican plant was a part of the overall Transitron operations. Defendant would purchase parts from other Transitron subsidiaries and transport them to Mexico. There they would be assembled and Transitron Mexicana would be paid a fee for this. The assembled components would then be shipped to Texas. The finished goods were sold back to the subsidiaries furnishing the parts originally. Plaintiff, in addition to his engineering and managerial duties at the Transitron Mexicana plant, had some responsibility for the export-import operations between the plant in Mexico and the Laredo, Texas, office of Defendant. The purpose of the Transitron Mexicana shop was to benefit the entire border development.

■■ It is argued by the Defendant that the contract was not completed until it was reduced to writing on April 17, and signed by the parties in Mexico. Since the employment contract was of three years' duration, the Defendant reasons that the statute of fraud prevents the original written offer and unwritten acceptance from being enforceable until such time as the agreement was reduced to writing and signed by both parties. However, the confirming letter of February 3, even though not originally accepted in writing, is sufficient to satisfy the Texas statute. In a contract of this nature, a written acceptance is not necessary. The writing need be signed only by the party to be charged, in this case Transitron Overseas Corporation. Street v. Johnson, et al., 96 S.W.2d 427 (Tex.Civ.App.) ; John L. Bramlett & Company v. Hunt, 371 S. W.2d 787 (Tex.Civ.App.). In any event, the execution by both parties of the April 17th agreement would certainly satisfy the statute. Black v. Hanz, 146 S.W. 309 (Tex.Civ.App., 1912); Simpson v. Green, 231 S.W. 375 (Tex.Com. App., 1921).

■ The term, the salary and the references to fringe benefits were clearly stated, in both the confirming letter and the signed agreement. But, the provisions as to what "professional services" were to be rendered appeared to be ambiguous. This was explained, how-

ever, on the trial before the jury by Plaintiff's testimony that his professional services rendered to Defendant were those of Chief Engineer and Supervisor. Such testimony was admissible; else, the contract language above quoted would be meaningless. That matter is now resolved.

Although both parties apparently accepted Transitron Overseas Corporation, with offices in Massachusetts and Texas, as the real employer, the Court has been perplexed about this because, as pointed out before, the confirmation letter of February 3 was on stationery of Transitron Mexicana, S.A., and signed by Zimmerman, and the written agreement of April 17 was signed by Plaintiff and by the same Zimmerman for Defendant Transitron Overseas Corporation. To complicate this picture, by letter dated September 9, 1970, on the letterhead of Transitron Electronic Corporation, Laredo, Texas, and signed by Thomas Lowe, Jr., Vice President, Mr. Dailey's employment was terminated, such action having been authorized by Mr. Bakalar, President of Transitron Electronic Corporation.

The Court can only conclude from all the evidence that there was little distinction within the operations at the border, and that the managing officers were the same in each corporation. Now, if that be the case, we can only deduce that Zimmerman, who was, in February, 1969, charged with the responsibility for all the Transitron operations on both sides of the Rio Grande River, just got the wrong stationery, or, being under the impression Plaintiff was to commence his duties at the Mexican plant, thought that stationery was appropriate.

In view of the several similarities between the letter offer and the written agreement, the term of employment, the salary and the reference to fringe benefits, and the fact Plaintiff had been on the job a couple of months before the written agreement was signed, this Court is of the opinion that the employment commenced after Plaintiff left his job in California, and at the time he took and passed the physical examination in Laredo, Texas, and settled in Webb County, Texas. It would seem that once Plaintiff was pronounced physically fit, the Defendant was obligated to him, and could not have then reneged without being guilty of breach of the employment contract. And it is also reasonable to assume that Plaintiff's employment was, at least for the time being, to be performed in Mexico.

There is another apparent discrepancy that has not been noted before. The original letter offer of February 3 refers specifically to the Transitron Mexicana operations in Nuevo Laredo, Mexico, and designates the Plaintiff as the branch manager of that operation. However, the written agreement of April 17 makes no reference to Transitron Mexicana, S.A., nor to the plant in Nuevo Laredo, Mexico.

Now, when you consider that the written agreement of April 17 made no reference to Transitron Mexicana, S. A., nor to Plaintiff's employment as branch manager of the plant in Nuevo Laredo, Mexico, it would seem such omission was made on purpose. The same individual, Zimmerman, signed each instrument and, consequently, was bound to have been aware, when he signed the April 17th agreement, of the contents in the offer letter of February 3. As pointed out above, the April 17th agreement was not necessary to satisfy the Texas statute of frauds, so such omission either amended the original contract to remove any restriction as to Mexico, or it created an ambiguity as to Plaintiff's participation in the Mexico operations. In either case, interpretive evidence was admissible to determine the place of performance.

The material evidence which lends itself to an explanation of the ambiguities is substantial. It seems reasonable to say that at the time of the negotiations, of the confirmation letter, and of the written agreement of April 17th, the parties to this suit really did not give any considered thought to which law might control in the event of a dispute.

But, if Defendant expected Plaintiff to be an employee of the Mexican plant, it would have treated him so. The Plaintiff initially lived in Laredo, Texas, and was paid by the Defendant corporation by checks drawn on banks in the United States. The Defendant corporation was not authorized to do business in Mexico, and it withheld his income taxes and Social Security deductions, consistent with employer practices relating to employees working within the United States, and, at the outset and during negotiations, company officials discussed with Plaintiff the likelihood of using Plaintiff's services elsewhere in Texas, in Kansas and perhaps in California. The contract was written in English, using a form of Transitron Electronic Corporation contract as a guide for its preparation. It was written by an employee of Defendant. The contract was terminated by action of officials of the parent corporation in its Massachusetts office. Mr. David Bakalar, President of Transitron Electronics Corporation, President of Transitron Overseas Corporation, and a director and officer of Transitron Mexicana, S.A., admittedly authorized the termination of the contract and authorized Mr. Lowe to sign the letter doing so.

 Moreover, the Texas Supreme Court has indicated that the intent of the parties is controlling on the question of which law is to be applicable. Here, if Mexican law is applied, the contract is unenforceable, for, under Mexican law, an employee cannot be required to work for more than one year. Article 40, Mexican New Federal Labor Code. The presumption in the law is against the parties entering into such an ineffective contract. Texas Gas Utilities Company v. Barrett, 460 S.W.2d 409 (Tex.1970). But, it was enforceable for its full term under the law of Texas, since the writing satisfied the statute of frauds, Section 26.01 of the Business and Commerce Code, V.T.C.A., and Article 3995 of Vernon's Tex.Civ.St., 26 Tex.Jur.2d 242 (Frauds, Statute of, Section 89).

Under the Mexican law, Plaintiff was required to file his grievance in Mexico with the Board of Conciliation and Arbitration, which is an independent judicial body provided for the purpose of hearing labor disputes, within two months from the date of dismissal, and by failing to do so, his action on such grievance lapsed. But, what protection would he have had if he proceeded under the Mexican law? He was not employed by a Mexican corporation, but by a Massachusetts corporation without a permit to do business in Mexico. Would his award have been against Transitron Mexicana when he was actually employed by Transitron Overseas Corporation? What enforcement procedures would he have had, if any, against the Defendant here for an award given him by the Mexican Board of Conciliation and Arbitration?

However, even if Plaintiff had substantive rights under Mexican law, his claim against Defendant in Mexico had lapsed when he brought suit in Texas. He was fired on September 9, 1970, and brought suit in the Laredo Division of this Court on November 25, 1970. Under Texas law, since the agreement was in writing, Plaintiff had four years within which to bring suit to recover on his employment contract.

It is the determination of this Court that Texas law is applicable to this action. The Defendant's motion for summary judgment is hereby denied.