**LOCKWOOD CORPORATION, Plaintiff,**

v.

**Clifford BLACK and Bill Jim St. Clair, d/b/a B & S Irrigation Company, a Partnership, Defendants.**

**Civ. A. No. CA–5–77–147.**

United States District Court,
N. D. Texas,
Lubbock Division.

Nov. 13, 1980.

Don Graf, George H. McCleskey, McCleskey, Harriger, Brazill & Graf, Lubbock, Tex., for plaintiff.

Gordon H. Green, Muleshoe, Tex., for defendants.

## MEMORANDUM

WOODWARD, Chief Judge.

This case came on for trial before the court, without a jury, on the 3rd day of November, 1980, with all parties and attorneys present. After hearing and considering the evidence, the pleadings, and the briefs and arguments of counsel, the court enters this memorandum, which shall constitute the court's findings of fact and conclusions of law. In addition, all of the stipulations of the parties contained in the Pre-trial Order will be considered as findings of fact by the court where relevant.

Defendants Black and St. Clair, doing business as a partnership under the name B & S Irrigation Co., purchased various irrigation equipment from Plaintiff Lockwood Corporation pursuant to a written agreement dated September 28, 1971. Defendants are residents of Texas while plaintiff is a Delaware corporation with its principal place of business in Gering, Nebraska. On May 29, 1974, St. Clair submitted a letter to Lockwood declaring he would no longer be associated with B & S Irrigation and asking that the contract be cancelled. The vice-president of marketing for Lockwood complied with this request and notified defendants of the termination of the contract effective May 29, 1974. Subsequently, defendant Black maintained business as B & S Irrigation in an individual capacity and although no written contract was consummated, Black continued to purchase irrigation systems and parts from Lockwood until 1976. Plaintiff filed this action against defendant Black for $6,613.90 claimed to be due or owing on the B & S Irrigation account and for interest and attorney's fees. Since this amount is for equipment ordered and delivered after May 29, 1974, plaintiff is no longer seeking judgment against St. Clair but only against Black doing business as an individual.

Black has filed a counterclaim alleging that Lockwood has assessed, claimed, and collected interest at a usurious rate and praying for damages and attorney's fees. The usurious interest complained of pertains to a "service charge" which was assessed to each of the B & S Irrigation sub-accounts: the Machine Dating Account (MDA) represented the complete irrigation system sold by Lockwood, and the Regular Account (RA) represented sale of spare parts. The Defendant argues that these service charges were not made pursuant to any agreement and are therefore illegal and usurious. Further, Black claims that failure to receive a cash discount which is offered if an invoice price is paid on or before a certain date, also constitutes usury.

## APPLICABLE LAW

The written contract between the parties effective from 1971 to May 29, 1974 contained the following provision:

"28. This contract shall be deemed by the parties to have been executed in the State of Nebraska, and in the event of breach of any of the covenants contained herein, regardless of the situs of the property involved or the place of breach, this contract will be interpreted and enforced in accordance with the laws of the State of Nebraska."

In two previous orders dated August 8, 1979 and December 20, 1979, this court has affirmed the validity of this clause and has ruled that the law of Nebraska would apply to the cause of action. The defendant asserts that since the contract was terminated on May 29, 1974, Texas law should apply to transactions occurring after that date. In turn, plaintiff contends that the parties' dealings and conduct after May 29, 1974 evidenced their intent to contract in reference to the laws of the State of Nebraska.

██ To begin, it is clear that the written contract between plaintiff and defendant was cancelled for all purposes on May 29, 1974 as evidenced by the letter written by Lockwood's vice-president to B & S Irri-

gation. The forum–selection clause also terminated as of that date. Consequently, the law which governs the remaining transactions and which determines whether those dealings created a contract depends upon Texas conflict of laws relating to the formation and validity of a contract. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Texas rules dictate the validity, interpretation and effect of contracts in general is determined by the law of the place where the contract is made. *Diaz v. Southeastern Drilling Co. of Argentina*, 324 F.Supp. 1 (N.D.Tex.1969) *affd.* 449 F.2d 258 (5th Cir. 1971). Stated another way, the law intended by the parties will be controlling, and particularly, in the absence of a contrary manifestation, the presumption is the parties contract with reference to the law of the place where the contract was made. *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697 (Tex.1968). Texas law defines the place of making of a contract as the place where the last act necessary to complete the contract is done, namely where the offer is accepted. *Reliance Universal, Inc. v. I. C. S. Corp.*, 452 S.W.2d 926 (Tex.Civ.App.–Ft. Worth 1970, no writ); *Dailey v. Transitron Overseas Corp.*, 349 F.Supp. 797 (S.D.Tex.1972), *aff'd*, 475 F.2d 12 (5th Cir. 1973). When an acceptance is given by telephone, the situs of the contract is where the acceptor speaks his acceptance, and it is that law which controls the interpretation of the contract. *Lipschutz v. Gordon Jewelry Corp.*, 373 F.Supp. 375 (S.D. Tex.1974).

■ In applying the foregoing rules to the facts of this case, it is apparent that Nebraska law should apply because the parties made an oral contract in Nebraska for the continued purchase of equipment after May 29, 1974. Black telephoned his orders to Lockwood in Gering, Nebraska which action amounted to an offer. Lockwood accepted the offer at that time and subsequently shipped the equipment F.O.B., Ger-

ing. Thus, the contract was formulated in Nebraska and that state's law must apply to all transactions between the parties.

The same result is concluded under the approach suggested by the Restatement (Second) of Conflicts. The procedure contemplated there hinges primarily on which of the two states has the more significant relationship to the transaction and the parties. *See* Restatement of Conflicts (Second) §§ 6, 188 (1971). Clearly, Nebraska is more closely associated to the parties' dealings since it is the situs of acceptance and where the contract is effectively made, since it is where the goods are shipped and where the Buyer assumes risk, and since it is the place of payment. The only relation the contract has to Texas is the fact that one of the parties resides in Texas and it is where the offer was initiated. *See Lipschutz, supra* at 385; *Diaz, supra* at 4.

■ Finally, as the opinion more fully sets forth below, the court finds that by their conduct, the parties were operating under the terms of their previous written contract. It is thus inferred that they intended to have Nebraska law apply to transactions occurring after the termination on May 29, 1974. U.C.C. § 2–208(1), § 1–205.

## EXISTENCE OF A CONTRACT AND DETERMINATION OF CONTRACT TERMS

■ Since the sale of the equipment in question is a sale of goods under the Uniform Commercial Code, the existence of a contract between Black and Lockwood and the determination of its terms are prescribed by the UCC as enacted in Nebraska. U.C.C. § 2–102; *see also* § 1–105 (applicability of Code to transactions bearing an "appropriate" relation to State of Nebraska). There is no doubt that a contract existed between the parties in view of Black's practice of ordering equipment over the telephone and Lockwood's policy of accepting and fulfilling the requests. U.C.C. § 2–204(1); § 2–206.[1] While it is true that a

---

1. Section 2–204(1) provides that "A contract for sale of goods may be made in any manner sufficient to show agreement including conduct by both parties which recognizes the existence of such a contract." Section 2–206 provides that "an order or other offer to buy goods from

contract of this type for an amount over $500 must be in writing, an oral contract which is valid in other respects other than a writing is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted. U.C.C. § 2–201(3)(c).

■ Black has received the equipment in question and has failed to reject it in accordance with Code provisions. Therefore, the contract is sufficiently binding on the parties although it does not comply with the statute of frauds.

■ The remaining question to be resolved is a definition of terms of the contract since the only written instruments passing between the parties were the invoices for the purchased equipment.

In the previous agreement of 1971, the parties agreed to an 8% service charge to be assessed to any unpaid balances. Lockwood has admitted that this so–called service charge is in fact interest and the court so finds. The 8% rate was applied from the inception of the contract until January 1, 1975 and at that point Lockwood began charging 12% interest which continued until the parties ceased their relations. Unquestionably, the 8% interest applied up until May 29, 1974 was proper, agreed to, and consented to by the parties, and it is only if this rate exceeded the statutory maximum that any usury would be involved. Additionally, the court finds that all orders placed prior to May 29, 1974 but delivered thereafter were still subject to the written agreement of 1971 and would be proper unless the rate exceeds the maximum allowed.

The issue is then narrowed to whether the parties agreed to the application of an interest rate after the written contract ended. The court finds that by their conduct, plaintiff and defendant did intend to continue the previous arrangement of paying interest.

The evidence indicates that the parties never changed their method of doing business although they essentially operated in the absence of a contract. Section 1–205 of the U.C.C. defines this type of activity as "course of dealing" and evidence of this sort can be used to interpret an agreement.[2] In essence, the transactions before and after May 29, 1974 were identical and so, the oral contract must be construed as containing an agreement for the payment of the 8% service charge.

Furthermore, Lockwood sent Black a series of invoices for the goods ordered after May 29, 1974 all of which contained the interest charge. Black failed to object to this assessment until the initiation of this litigation. According to U.C.C. § 2–208(1), "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." *See also* U.C.C. § 2–207(3).[3] The court then concludes that the parties agreed to the application of an interest charge despite the lack of a written document.

*USURY*

■ The final issue pertains to whether the 8% or 12% rates of interest were usuri-

---

prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, . . ."

**2.** Section 1–205 states a course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

**3.** Section 2–207(3) provides that "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writing of the parties agree, together with any supplementary terms incorporated under any other provisions of this act." Here the parties did not have writings sufficient to create a contract; however, the invoices are evidence of terms on which the parties agree.

ous under Nebraska law. The statute in effect at the time in question provided for the maximum interest rate of 9% per annum. Neb.Rev.Stat. § 45–101 (1967). (Changed to 11% per annum on August 24, 1975.) In such case, all of the service charges assessed by Lockwood at a rate of 8% are within the statutory limit and the defendant has no defense to the payment of his full account up until January 1, 1975. However, the increase to 12% certainly exceeds the allowable rate and this charge must be deemed usurious.

As stated earlier, Black has also claimed a usurious charge of interest in the form of a cash discount. The court finds that inasmuch as Black never took advantage of the cash discount, incurred no penalty for such action, and merely had to pay full invoice price, this cannot be considered as an item charged in the form of interest or that could be used in computing whether or not there was usury.

 The fact that a usurious amount of interest has been contracted for, taken, or reserved does not void the contract; instead, the plaintiff recovers the principal without interest and the defendant recovers cost. Neb.Rev.Stat. § 45–105 (1929). Therefore, Plaintiff Lockwood is entitled to judgment for the balance of the account in the amount of $6,613.90 less the amount of interest charged after January 1, 1975 which is $522.87. The total recovery for Lockwood is $6,091.03 and interest shall accrue on this sum at a rate of 8% per annum from the date of rendition of judgment. Neb.Rev.Stat. § 45–103 (1972).

Both parties have claimed attorney's fees and have stipulated that $5,000.00 would be a reasonable recovery; however, each party contests the right of his opponent to receive attorney's fees. First, the usury statute clearly indicates that the defendant is to recover costs. It appears then that Lockwood would not be able to receive attorney's fees under this provision. On the other hand, Nebraska law does not seem to include attorney's fees in the definition of costs and thus, Black would also not be entitled to recover fees under this section. Second, the law applicable for the recovery of attorney's fees under Plaintiff's main cause of action on the account is Neb.Rev.Stat. § 25–1801 which allows attorney's fees to be awarded in the following instances:

"Any person, partnership, association, or corporation in this state having a claim which amounts to $2,000.00 or less, against any person, partnership, association or corporation doing business in this state, for (1) services rendered, (2) labor done, (3) material furnished . . . ."

Since this lawsuit is for more than $2,000.00, it is evident that plaintiff cannot recover attorney's fees in accordance with the statute. The court therefore concludes that neither party is entitled to attorney's fees in this action.

Defendant will recover costs.

The plaintiff is not entitled to recover post–judgment interest on its recovery. *Central Construction v. Blanchard,* 180 Neb. 62, 141 N.W.2d 416 (1966).