CONTINENTAL CASUALTY COMPANY V.
AUDIE WARREN.

No. A-3713. Decided January 28, 1953.
Rehearing overruled March 11, 1953.
(254 S. W. 2d Series 762)

*Kemper & Wilson* and *W. L. Kemper,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that though at the time of decedent's death he was piloting the plane which crashed and killed him, he was a passenger within the meaning of the terms of the insurance policy. English v. Miller, 43 S.W. 2d 642; Gulf C. & S. F. Ry. Co. v. Wilson, 79 Texas 371; International Travelers' Ass'n. v. Yates, 29 S.W. 2d 980.

*Woodul, Arterbury & Wren* and *Howard S. Hoover,* all of Houston, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The matter at issue here is whether the death of an areoplane pilot in an accidental crash of the plane under his control is within the coverage of an aeroplane accident insurance policy issued by the petitioner-defendant Continental Casualty Company. The trial petition of respondent-plaintiff, Mrs. Audie Warren, widow of the pilot, seeking recovery under the policy and disclosing all the relevant policy terms and other facts, was met by an appropriate exception on the part of the petitioner-defendant insurer, which, being sustained by the trial court, resulted in a dismissal of the suit upon refusal of Mrs. Warren to amend. The Ft. Worth Court of Civil Appeals reversed this judgment and remanded the case "for further trial not inconsistent with this opinion." 248 S. W. 2d. 315.

The policy was issued to a business firm, Callery & Hurt Inc., which owned the areoplane in question and employed pilot Warren to operate it. Generally speaking, the insurance provided indemnity to the policyholder up to the principal amount here in suit for loss incident to injury (including death) of its officers, employees or guests, resulting from operation of the areoplane. Following the crash, Callery & Hurt Inc., demanded payment under the policy and, upon failure of the petitioner-defendant to comply, assigned its rights to the respondent-plaintiff. The only question presented to us is whether the claim is without the policy coverage because pilot Warren was killed while piloting the plane as distinguished from being merely transported therein.

The more critical provisions (with certain critical language italicized by us) read:

"That it will indemnify the employer for loss resulting from injury sustained by any officer, employee or guest of the employer (herein individually called insured person); to the extent herein provided.

" 'Injury' wherever used in this policy means bodily injury caused solely by an accident occurring while the policy is in force and resulting directly and independently of all other causes in loss covered by the policy, *provided such injury is sustained by the insured person in consequence of riding as a passenger in, boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being struck by the twin engine six passenger-place Beechcraft Aircraft D 18 S, License NC 80496,* owned by the employer, which aircraft at the time of the accident is flying with the consent of the Employer in or between the Continental United States, Mexico and Canada and is piloted by a person who holds a valid and current certificate of competency of a rating authorizing him to do so."

Further on in the policy there is a special "Part" or chapter entitled "Exclusions," which in brief disclaims coverage for any "loss" resulting from suicide, war, military or naval service, "accident occurring while the aircraft herein described is carrying passengers for hire," and certain types of flying such as acrobatic, stunting, racing and endurance testing. Neither in this nor any other part of the policy is there language which could fairly be described as categorically excluding the pilot or any class of "insured person" ("officer, employee or guest of the employer") within which a pilot would necessarily fall, nor, more certainly, is there any provision directly and expressly

limiting coverage under the policy generally to such an officer, employee or guest as should at the same time be a "passenger" of the plane. There is, however, a provision limiting the indemnity to $25,000 "as to each insured person" and to six times that sum ($150,000) as to any one accident, and a recital that the premium is based on a rate of $125 "for each passenger place" in the plane and that this totals $750, or six times $125.

■ But for the fact that insurance policies are governed by the special rule of construction, which is a familiar part of our jurisprudence, we might, indeed, hold either that the interpretation against liability of the insurer should prevail or that, the policy being ambiguous, there is a fact issue as to what was intended. Yet the rule, of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable. Lloyds Casualty Insurer v. McCrary, 149 Texas 172, 179, 229 S. W. 2d. 605, 609. A related or subsidiary rule is "that exceptions and words of limitation will be strictly construed against the insurer." Providence Washington Ins. Co. v. Proffitt, 150 Texas 207, 239 S. W. 2d. 379, 381. For all the particular considerations reasonably indicating that the pilot is not covered, there are yet others making it not unreasonable to say that he is, and that the insurer is therefore liable.

■ We start with the initial broad statement that "every officer, employee or guest" of the policyholder is, in the very words of the insurer itself, an "insured person". This naturally suggests to the ordinary reader that all of the class mentioned—which, of course, includes the pilot—is insured for such risks and with such limitations as may follow in the rest of the policy. The additional phrase, "to the extent herein provided" does not make the preceding provision any the less a statement of the persons who are "an insured person," that is, who are insured. Since the phrase does not refer to any particular succeeding provision, it amounts to no more than, for example, "subject to the further terms of this policy" and is by way of suggesting that important matters are to follow. The next paragraph—immediately following—purports to be an extended definition of the erstwhile simple word "injury," but is more a statement of risks insured against, and is in no case a restatement of who is "an insured person." If it were intended to be the latter, the "insured person" paragraph would probably not have been written, and in the "injury" paragraph, the words "bodily injury"

would have been followed by some such phrase as, "to any officer, employee or guest of the policyholder." At the same time, of course, the "injury" paragraph does set out the risks and sundry related matters, without the addition of which the "insured person" provision would serve no purpose. (An insurer obviously has to insure his "insured person" against something and for an amount, else there is no insurance). But, if this risk or "injury" paragraph had merely said "This insurance is against accidental bodily injury or death received in consequence of riding in" the aeroplane in question, and the amount of insurance had been duly stated, there would have been a complete contract of insurance, and it would undoubtedly have covered the pilot and everyone else described in the "insured person" paragraph. Rather clearly, therefore, the purport of the so-called "injury" paragraph is to state the risks in contradiction to the persons insured, and if the intended effect of the description of the risk is to limit the persons insured so as to eliminate one group of them altogether, it thus operates as an indirect sort of exclusion or exception clause and should accordingly be very clear insofar as it is to deny application of the insurance. And the indirectness of the exception is the greater, since the whole 135-word paragraph in question purports to be a mere definition of "injury," when it is actually a full statement of the insured risks.

Thus the question is, does the risk ("injury") paragraph or any succeeding part of the policy operate clearly to exclude the pilot, who, being an "employee" is, in the insurer's own words, "an insured person," so that to say the pilot is insured would be not merely less realistic than to exclude him, but also of itself a view beyond the broad pale of reason. Obviously the question could have been easily disposed of beyond a doubt by a few words in the "exclusions" section, or by inserting a phrase such as "other than airplane operatives" in the "insured person" paragraph or inserting after "bodily injury" in the risk paragraph "to a person other than the one piloting the plane." But, there is no such clear exclusion of the pilot anywhere in the policy, and the insurer thus has to bottom its position on the risk or "injury" definition proviso that "such injury is sustained by the insured person in consequence of *riding as a passenger in,* boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being struck by" the plane (italics supplied). Certainly without the italicized words we would not have this lawsuit, whatever else may be said to aid the construction urged by the insurer. The pilot would

be covered because (a) he is "an insured person" under the initial paragraph and (b) the insured risk came to pass.

Now the mere word "passenger" cannot be said to exclude the pilot, although, here too, the insurer might have excluded him beyond question by the simple insertion of a phrase such as "and not as the pilot." As sufficiently demonstrated in the opinion of the court below, such dictionary definitions as give the word a significance of non-operator of the vehicle concerned are but one of several definitions given by the same work, while common parlance undoubtedly uses it at times in the sense of "occupant" of a private vehicle, as in the familiar expression "a six-passenger automobile." We are cited to no decision fixing the meaning to exclude the operator of a private vehicle, which the aeroplane in question here undoubtedly was, and the significance of "passenger" as applied to common carriers has little relevance to a situation where no carriage for hire, public or private, is involved. The cited decision in Wood v. General Accident Ins. Co., 160 Fed. 926 (3rd. Cir.) in which a government employed railway mail clerk killed in the mail car while there performing his duties, was held to be uninsured by a passenger-type accident provision of a policy, evidently rested on the peculiar terms there involved, to wit "while actually riding as a passenger in or on any regular passenger conveyance provided by a common carrier." The risk obviously excluded riding in a mail car, and the decision thus does not hold "passenger" to exclude the idea of operator even in connection with a common carrier. Nor do those statutes regulating aviation, which choose to define "passenger" and "pilot" in mutually exclusive terms, even purport to regulate the meaning of insurance policies or have more than a very remote bearing on general usage, as distinguished from specialist or military understanding, of those words. General usage is, of course, the proper criterion, as evidenced by the very decisions cited for the insurer in the instant case.

It must be conceded that the full phrase, "riding as a passenger in," does suggest a meaning of "passenger" as a non-operative of the plane. However, we obviously are not limited to considering this one phrase, if other provisions of the policy. have logical bearing on the intended coverage, as they do. Thus, if we but consider the complete enumeration of the risks—"riding as a passenger in, boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being struck by" the plane, we find that, grammatically speaking; any

requirement of the insured person being a passenger in the sense of non-operator applies only to the "riding" risk and to none of the other four. Conceivably the insurer intended to say "as a passenger, riding in, boarding, alighting from" and so on, thus using "passenger" not only to mean non-operators of the plane but also to exclude many another erstwhile "insured person," who would be a quite natural object of the insurance afforded—as, for example, if the president of the policyholder company should come to deliver a message to a vice-president about to depart on the plane and be "struck by" the propeller. But to defend such a claim on the theory that "riding as a passenger in" caused "being struck by" to mean "being, as a passenger, struck by," despite correct grammatical construction to the contrary, would seem hopeless for an insurer. "As a passenger in" modifies "riding"—not "boarding" or any other of the participles separately employed and definitely separated by commas or disjunctives. We can say it was intended to modify them all only if we favor the insurer with a construction at odds with its own language as grammatically employed.

Thus keeping "as a passenger" in the place where the insurer itself firmly located it, the result is that as to all the five risks, except possibly that of "riding," every non-passenger "insured person" would be covered, if he were injured by the risk, and this, of course, includes the pilot as an "employee" of the policyholder and accordingly "an insured person." If we say that the pilot is a non-passenger and thus excluded from the "riding" risk, we reach the extraordinary result that he is covered, for example, for a parachute drop, and yet not covered for a crash of the plane. True, that might be a reason to say that "as a passenger" should apply to all the risks, despite the language to the contrary, but in the case of insurance policies, doubts are properly resolved against, and not for, the insurer. And since "as a passenger" can be construed to mean "as an occupant" and taken as merely inadvertent tautology, the rule of construction in insurance cases favors that solution rather than one excluding the pilot.

That the former is far from fanciful is clear enough, if we merely imagine the case of the pilot himself being "struck by" the propeller or injured in "boarding" or "alighting from" the plane. Surely in such an instance we would suffer no strain whatever in holding that "as a passenger" would not be read into the risks there involved in defiance of grammatical usage. And the step from such a highly probable holding to that here

argued for follows almost necessarily. That the instant case involves liability only under the "riding" risk does not prevent our considering the effect of the other risks in determining whether such liability exists. If a construction of non-liability under one part of a contract would operate to produce an absurd result from the contract as a whole, that fact has clear logical relevance to whether the construction should or should not be adopted. It is interesting to note that, on the oral argument, the insurer's only explanation of this apparent oddity of covering the pilot for one risk and not another was that "as a passenger" must be read into each separately enumerated risk. If that is so, the insurer is placed in the rather clearly untenable position, that no "insured person"—plane operator or otherwise—is insured unless he be a "passenger." If it is not so, we have a policy that both excludes and includes the pilot, unless we construe "passenger" in the sense of "occupant" and thereby include the pilot and other "insured persons" for all the risks.

Another effort to show that the pilot is, with total clarity, excluded from coverage, consists of a sort of paraphrase of the "injury" definition or risk paragraph, so as to offset the noun "passenger" in the "riding" risk against the participle "piloted" occurring, some 50-odd words farther on, in a final clause of the same sentence. Certainly the result is consistent with the idea that "passenger" includes the meaning of "non-pilot," though, clearly also, it adds to the confusion as to just who is covered by the policy, because the further inference, if there be any inference, is that the policy covers all "insured persons" except the pilot, which the insurer evidently contends not to be the case. In any event, the argument has little positive force. The noun "pilot" nowhere occurs, and the participle "piloted" could just as well have been "driven" or "flown." Obviously all automotive vehicles have to be driven, run or piloted, and the purpose of the clause in which "piloted" occurs was not to describe further who was or not "an insured person," but to reduce liability for accidents due to unskillful handling of the plane. This is quite clear from the language, which lies between "riding as a passenger in" and the word, "piloted" and which purports to mean that no coverage at all exists under the policy unless the plane is "flying" (as well as "piloted") when the accident occurs (despite the previous express coverage in cases of "boarding, alighting from" and "being struck by"). The clause amounts to no more than a separate proviso that "flying" accidents are excluded when the "person" operating the plane

is not properly licensed. The inference that the pilot is excluded from coverage is only an inference and a rather remote one.

Finally it is said that the aforementioned provisions, basing the premium on the six "passenger-places" of the plane and evidently placing the indemnity payments on a similar basis, show beyond per-adventure of a doubt that the pilot is excluded from coverage. Assuming, as perhaps we may assume in the absence of a statement to the contrary from the respondent-plaintiff, that these "places" or seats mean seats other than the seat of the pilot and copilot (if any) and admitting, as no doubt we should, that these provisions are thus consistent with and in some degree tend to support the idea that the pilot is not insured, they are yet but cumulative and far from conclusive. Surely it would not be argued that without the "as a passenger" phrase in the "injury" paragraph, these provisions would make it wholly unreasonable to say the pilot was covered. Nor, if a seventh rider besides the pilot should make a flight for the sole purpose of being transported and should sit in the aisle or in the copilot's otherwise vacant seat, would it be the least unreasonable to hold him covered under the policy as written, although the total indemnity provision would still limit the amount recoverable from any one accident. In other words these provisions are merely what they purport to be—provisions governing the premium and the amount or amounts of loss payable, and have only a remote bearing on the questions of who is insured and for what risks. The underlying idea appears to be that only those persons are insured who actually ride the plane and for mere purposes of transportation, but, as before indicated. this is in rather open conflict with the grammatical sense of the language "riding as a passenger in, boarding, alighting from * * * * or being struck by" the plane. And if the provisions in question do not operate, as they apparently would not, to prevent recovery by a seventh passenger not sitting in a regular "passenger seat," why should they operate to prevent recovery by one who is not a passenger in any sense, but is "an insured person" who might, for example, be struck by the propeller or fall from the door in the course of delivering a message to someone on the plane?

In any event, in the rather analogous case of Lloyds Casualty Insurer v. McCrary, supra, in which the premium was calculated on the basis of floor space occupied by the insured business, the insurance was yet held to apply to business done off the

premises despite an insuring clause indicating that only operations on the premises were covered.

Since, therefore, the intent of the policy to exclude the pilot is not so certain as to make it wholly unreasonable to say that he was included, the judgment of the Court of Civil Appeals so holding should be affirmed and it is so ordered.

Opinion delivered January 28, 1953.

MR. JUSTICE GRIFFIN joined by Justices SMEDLEY, BREWSTER and WILSON, dissenting.

The crux of this case is whether Jesse C. Warren, deceased husband of respondent, Audie Warren, was covered by the accident insurance policy issued by petitioner. The test of liability is whether or not the pilot was within the risks assumed by petitioner when it issued the policy. Petitioner agreed to indemnify the employer for loss *resulting from injury* sustained by any officer, employee or guest of the employer *to the extent herein provided.* After defining injury, the policy proceeds "provided such injury is sustained by the insured person in consequence of *riding as a passenger in,* boarding, alighting from, making a parachute jump from, (for the purpose of saving his life) or being struck by the twin engine six-passenger-place Beechcraft Aircraft D18S, License NC 80496, owned by the employer, which aircraft at the time of the accident * * * *is piloted* by a person who holds a valid and current certificate of competency of a rating authorizing him to do so." (Emphasis added). There is no contention that Jesse C. Warren was killed in consequence of an injury resulting from "boarding, alighting from, making a parachute jump from, (for the purpose of saving his life) or being struck by the twin engine, etc. etc." Therefore, for respondent to recover Warren must have been a *passenger* riding in the six passenger-place Beechcraft *piloted* by a duly licensed *pilot.* A statement of the facts upon which petitioner must rely for a recovery shows that the "pilot" is not a "passenger" within the meaning of the policy. To say that the pilot is a passenger and therefore entitled to recovery under this policy is to make Warren a passenger riding in the six-place Beechcraft aeroplane which he is at the same time piloting. If this is the law the use of the words "piloted by a duly licensed pilot" is surplusage and has no meaning whatsoever. All that was necessary to say was that the insured person could recover if riding as a passenger in the six-place Beechcraft plane and stop at this point, but the parties did not stop here. They added

174

"which aircraft at the time of the accident * * * is piloted by a person who holds a valid and current certificate of competency, etc. etc."

I do not believe the term "passenger" includes "pilot" in ordinary parlance, aeronautical usage, or legal contemplation. "Passenger" as defined in Webster's New International Dictionary is "a traveller, by some established public conveyance, as a coach, omnibus, steamboat, railroad train, etc." "Passenger" is defined in the Uniform State Law for Aeronautics as including "any person riding in an aircraft but having no part in its operation." 2 C. J. S. 902; Hotchkiss, The Law of Aviation, 2d Ed. 459. The word "passenger" as applied to carriers has been given the same meaning. In Aschenbrenner v. U. S. F. & G. Co., 292 U. S. 80, 54 S. Ct. 590, 78 L. Ed. 1137, in discussing the meaning of the word "passenger", the Court said: "In its usual popular significance the term, when applied to one riding a train, indicates a traveler, intending to be transported for hire or upon contract with the carrier, *and distinguishes him from those employed to render service in connection with the journey.*" (Emphasis added). Quoting from 31 Words and Phrases, Perm. Ed., 337 a "passenger" is defined as "a person who undertakes, with the consent of the carrier, to travel in a conveyance provided by the latter, otherwise than in the service of the carrier as such", and citing Higley v. Gilmer, 3 Mont. 90, 99, 35 Am. Rep. 450; Denver, S. P. & P. Ry. Co. v. Pickard, 6 Pac. 149, 152, 8 Colo. 163; Berry v. Missouri Pac. Ry. Co., 124 Mo. 223, 247, 25 S.W. 229.

It is no answer to say that Warren was covered by the first part of the above quotation from the policy under the terms "officer, employer or guest of the employer", because the policy goes on to state the terms of liability to be "to the extent herein provided." If the policy had been intended to cover all "officers, employees or guests" riding in the aircraft, there would have been no need of further words, and the enumeration of conditions which follow show clearly that all injuries were not insured against.

By the inclusion in the policy of the requirement that the aircraft in which the insured must be riding shall be piloted by a duly licensed pilot, it is clearly shown, under the facts of this case, that the policy does not cover the pilot. The parties used the language "riding as a passenger in" for some purpose. That purpose was to distinguish "passenger" from "pilot", and for

further demonstration that the parties to this contract did not intend to include the pilot as within the terms of the coverage. We find the following statement in the policy as to the coverage paid for at the time the policy was issued: "This policy is issued in consideration of the payment of an annual term premium of $750.00, calculated at the rate of $125.00 per annum for each passenger-place in the aircraft herein described." This says that premiums are paid "for each passenger-place in the aircraft described herein." The policy, as above set out, refers to the twin-engine six-place Beechcraft aircraft, etc. * * * which aircraft at the time of the accident is piloted by a person, etc." The rate is stated to be $125.00 per annum per passenger-place, and the annual term premium is $750.00. A simple mathematical calculation shows that only six passengers were covered. This does not include any coverage for the pilot who is piloting the six-passenger place aircraft. This again, to my mind, is absolute and uncontroverted proof that the pilot is not covered. Giving added weight to my contention that the policy covers only the passengers, and not the pilot, is the following provision of the policy:

> "LIMIT OF INDEMNITY
> The limit of Indemnity as to each insured person shall be
> PRINCIPAL SUM          PART II          $25,000.00
> Notwithstanding the limit of Indemnity above specified for each insured person, the Company's limit of Indemnity under this policy for all losses arising out of any one accident shall be $150,000.00."

Again simple arithmetic will show that no more than six persons would possibly be covered in any one accident. In the face of the provision that the injury for which indemnity will be paid must be sustained by the insured person in consequence of "riding as a passenger in, boarding, alighting from, making a parachute jump from, (for the purpose of saving his life) or being struck by the twin engine six passenger-place Beechcraft Aircraft D18S, License NC 80496, owned by the employer, which aircraft at the time of the accident * * * is piloted by a person who holds a valid and current certificate of competency of a rating authorizing him to do so"—how can it be maintained that the pilot is covered? Clearly, if all six-passenger places were occupied at the time of an accident, the pilot would not come within the risk assumed. The risk on the pilot was not paid for, nor was it included within the limit of indemnity, and, to my mind, could not possibly be covered by this policy.

The policy as a whole has no ambiguity and must be construed as the parties wrote it and agreed upon its terms at the time it was issued and only to cover those risks for which a premium was paid or the terms upon which the parties agreed. The plaintiff's petition alleged in paragraph III, "* * * that Jesse C. Warren, husband of plaintiff, Audie Warren, and an employee of Callery & Hurt, Inc., *was piloting* the said Beechcraft aircraft and was instantly killed in said crash." (Emphasis added).

Deceased Warren, being the pilot upon the flight in which he lost his life, was not covered by the policy issued, and there can be no recovery under the policy. I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Opinion delivered January 28, 1953.

Rehearing overruled March 11, 1953.