### KINNAVY v TRAILL

1. INSURANCE—POLICIES OF INSURANCE—INTERPRETATION.

   The terms of an insurance policy must be construed in accordance with the ordinary and popular sense of the language used so as to avoid strained interpretations.

2. INSURANCE—POLICIES OF INSURANCE—EXCLUSIONARY CLAUSES—INTERPRETATION—AVIATION—PASSENGERS—PILOTS.

   A clause in an insurance policy which excludes coverage for any and all aviation activity with the one exception of "a passenger" is not ambiguous; the interpretation an ordinary man would give the phrase is that the policy differentiates between one who is exercising actual physical control of an aircraft, a pilot, and a passenger in an aircraft.

3. INSURANCE—POLICIES OF INSURANCE—EXCLUSIONARY CLAUSES—INTERPRETATION—AVIATION—PASSENGERS—PILOTS.

   An insurance policy which provided insurance coverage only while the insured was a passenger in an aircraft "tried, tested and approved" did not extend coverage to a situation where the insured met his accidental death as a pilot while flying his aircraft; the words "tried, tested and approved" do not alter the requirement that the insured be a passenger in the plane, but limit the risk of the insurance company to aircraft which are mechanically sound.

Appeal from Berrien, William S. White, J. Submitted Division 3 October 10, 1974, at Grand

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance §§ 261, 264.

[2] 43 Am Jur 2d, Insurance §§ 1321, 1329, 1330.

[2, 3] Construction and application of provision of life or accident policy relating to aeronautics. 155 ALR 1026, s. 17 ALR2d 1041.

[3] 43 Am Jur 2d, Insurance §§ 1321, 1326, 1327.

What constitutes operating, riding in, or descending from aircraft within provision of life or accident policy relating to aeronautics. 47 ALR2d 1021.

Rapids. (Docket No. 17203.) Decided November 6, 1974. Leave to appeal applied for.

Complaint by Maureen C. Kinnavy against Ronald G. Traill individually and on behalf of those underwriters at Lloyds, signatory to a Lloyds' Cover Note #3443, for the proceeds of an accident policy. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Ryan, McQuillan, Vander Ploeg & Fette,* for plaintiff.

*Seymour, Seymour, Conybeare & Hosbein (Lord, Bissell & Brock,* of counsel), for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

McGREGOR, J. Plaintiff's husband, Robert J. Kinnavy, was a vice-president of Bastian—Blessing Company, headquartered in Chicago, Illinois. The employees of Bastian—Blessing Company were insured under a group accident policy, issued by defendant in the amount of $50,000.00 for accidental death.

Mr. Kinnavy lived in Benton Harbor, Michigan, and commuted to work each day in his personally-owned Piper-Cherokee airplane. Plaintiff would drive her husband to the airport in Benton Harbor and he would then fly to Sky Harbor airport, a small field on the northwest side of Chicago. Mr. Kinnavy kept a car at Sky Harbor airport, which he used to travel to and from his office.

On November 13, 1969, Roger Kinnavy took his usual flight to work, left the office around 4:30 p.m. and was never seen alive again. On December 6, 1969, the body of Mr. Kinnavy washed up on a

Lake Michigan beach near New Buffalo, Michigan. The medical examiners determined that his death was caused by external-violent means, and that his injuries were of the type frequently found in aircraft fatalities.

While no one actually saw Roger Kinnavy's plane take off or crash, the undisputed circumstantial evidence established that Mr. Kinnavy died while piloting his plane. Between 5:30 p.m. and 6:30 p.m. on the evening in question, it was noted that Kinnavy's car was parked at the Sky Harbor airport and his plane was gone. The National Weather Service in Chicago reported taking a call that night from someone on the ground, identifying himself as the pilot of 7636J, who requested weather information on the flight route to Benton Harbor, Michigan. The South Bend airport also reported receiving a call from the pilot of 7636J that night, requesting landing clearance. The plane, however, never came in for a landing and all contact was lost with it. There was no evidence that anyone was in the plane with Mr. Kinnavy when he left Sky Harbor, or that any other body was found, or that any other person was ever reported missing.

On June 24, 1970, the plaintiff, as a named beneficiary of the accident policy, brought suit to claim the insurance proceeds. The defendant insurer, in its answer of October 7, 1970, asserted an affirmative defense that the claim was barred because the policy excluded recovery for injury or death in any type of aviation endeavor. The exclusionary clause reads as follows:

"IV. Exclusions: This contract does not cover death, injury or disablement; * * *

"(d) while engaged in or taking part in aeronautics and/or aviation of any description or resulting from

being in any aircraft except while a passenger in an aircraft previously tried, tested and approved; * * * "

On May 19, 1971, the defendant insurance company moved for summary judgment, arguing that since Roger Kinnavy was a pilot of the plane, he could not qualify as being a "passenger". This motion was denied.

On April 6, 1973, the plaintiff moved for a partial summary judgment, asking the court to interpret the exclusionary clause to mean that a pilot could recover as long as the airplane was tested and approved. The trial court granted plaintiff's motion on April 10, 1973.

The case proceeded to trial solely on the question of whether the death was caused by accident. On April 11, 1973, the jury returned a verdict in favor of the plaintiff in the amount of $50,000, the value of the policy. Defendant insurer brings this appeal from the judgment and the trial court's grant of partial summary judgment in favor of the plaintiff.

The defendant's position on appeal is that the trial court erred in denying its motion for summary judgment, based on the exclusionary clause of the accident policy.

The narrow issue before this Court is whether insurance coverage under defendant's policy, which excludes coverage for any and all aviation activity, "except while a passenger in an aircraft tried, tested and approved," extends coverage to a pilot while flying his own aircraft. We hold that it does not.

The trial court, in granting partial summary judgment, adopted plaintiff's theory that the exclusionary clause was ambiguous and must, therefore, be strictly construed against the defendant insurance company. The court held the exclusionary

clause would not bar recovery because it could reasonably be construed to mean that any "occupant" could recover, if killed in a private plane crash, so long as the plane was previously tried, tested and approved by the FAA. Since there is no dispute that the aircraft carried a Certificate of Airworthiness, trial proceeded on the remaining issues in the case. The focus of the plaintiff and the court is on the *condition of the aircraft,* whereas, under the defendant's construction, the focus is on the *status* of the occupant.

The trial court, in finding an ambiguity in the exclusionary clause in the case at bar, relied heavily on *Continental Casualty Co v Warren,* 152 Tex 164; 254 SW2d 762 (1953). In *Warren,* an aviation policy expressly covered all of the employees of a certain company. Then, in describing the type of injury that was covered, the following clause was inserted:

" * * * provided such injury is sustained by the insured person in consequence of riding as a passenger in, boarding, alighting from, making a parachute jump from (for the purpose of saving his life) or being struck by the twin engine 6 passenger-place Beechcraft Aircraft * * * "

In *Warren,* the court was required to determine whether the phrase "in consequence of riding as a passenger in" covered the decedent who perished while piloting an aircraft. The court initially recognized the broad inclusion of all employees as injured persons, regardless of whether or not one acted as a pilot. The court decided that an employee-pilot would be covered if he was injured while "boarding, alighting from, making a parachute jump from" or being struck by an aircraft. The court concluded that the language of the clause was ambiguous, since an employee-pilot was

covered, for example, while making a parachute jump, but not while continuing as pilot.

However, for a doubt or ambiguity to exist, there must be some language in the policy to create the doubt. *Lincoln Mutual Casualty Company v American Arbitration Association,* 49 Mich App 676; 212 NW2d 765 (1973). In *Paul Revere Life Insurance Co v First National Bank in Dallas,* 359 F2d 641 (CA 5, 1966), the Court relied on the above principle to distinguish *Warren, supra.*

In *Paul Revere* an exception to a life insurance policy stated that the policy did not cover death or disability resulting from a flight in an aircraft except as a "passenger on a civilian plane." It was stipulated that the insured was killed while piloting a private plane which crashed. The court, in *Paul Revere,* distinguished *Warren, supra,* as follows:

"The *Paul Revere* policy language is clear, and it is not disputed that decedent was the pilot of a civilian plane. The coverage excepted death resulting from ' * * * flight in aircraft except as a passenger on a civilian plane.' The question is whether the pilot was also a passenger. There is no additional language in the contract, as was the case in *Continental Casualty,* which has logical bearing on the intended coverage. And we cannot say that the word 'passenger' on its face includes the pilot or operator of a plane. The term is not inherently ambiguous when used in its common or popular meaning. * * * We hold that common or popular meaning of 'passenger' does not include the pilot."

As in *Paul Revere,* this Court has repeatedly held that the terms of an insurance policy must be construed in accordance with the ordinary and popular sense of the language used, so as to avoid strained interpretations. *Cora v Patterson,* 55 Mich App 298; 222 NW2d 221 (1974).

The clause under examination in this case excludes coverage for any and all aviation activity, with one exception: "a passenger in an aircraft * * * tried, tested and approved". There is no ambiguity in this clause. The interpretation which an ordinary man would give to the phrase is that the policy differentiates between those involved in the flying of airplanes and those not so involved. In other words, one who is exercising actual physical control of an aircraft, a pilot, is not a "passenger" in an aircraft. The requirement that the aircraft in which the insured is a "passenger" must be tried, tested and approved does not alter the requirement that the insured be a "passenger" in the plane. Rather, it limits the risk of the insurance company to aircraft which are mechanically sound and FAA approved. The words "tried, tested and approved" do not expand the meaning of "passenger" but, rather, limit the meaning of "aircraft."

While not controlling, it should be noted that the Uniform Aeronautics Law defines "passenger" as follows:

" 'Passenger.' Includes any person riding in an aircraft but having no part in its operation."

*American Mercury Insurance Co v Bifulco,* 74 NJ Super 191; 181 Atl 2d 20 (1962); *Spiess v United Services Life Insurance Co,* 348 F2d 275 (CA 10, 1965).

It should also be noted that a Michigan statute dealing with penal code violations for aircraft, defines the word "passenger" to exclude "pilot." MCLA 750.43; MSA 28.232. Likewise, the Uniform Aircraft Financial Responsibility Act also distinguishes between a "passenger" and the "operator" of an aircraft. MCLA 259.671; MSA 10.551.

We therefore hold that the trial court erred in denying defendant's motion for summary judgment, since the insurance policy, which provided insurance coverage only while the insured was a "passenger" in an aircraft "tried, tested and approved" did not extend coverage to the situation where the insured met his accidental death as a "pilot" while flying his aircraft.

Reversed and remanded to the trial court for the entry of an order consistent with this opinion.

All concurred.