# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 19, 2014

Lyle W. Cayce
Clerk

No. 13-20433

U.S. METALS, INCORPORATED,

Plaintiff–Appellant,

v.

LIBERTY MUTUAL GROUP, INCORPORATED, doing business as Liberty Insurance Corporation,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-379

Before STEWART, Chief Judge, OWEN, Circuit Judge, and MORGAN*, District Judge.

PER CURIAM:**

This appeal arises from a dispute between U.S. Metals, Inc. ("US Metals") and Liberty Mutual Group, Inc. ("Liberty") regarding coverage of certain damages pursuant to two exclusions in a commercial general liability insurance policy. This case involves important and determinative questions of

---

* District Judge of the Eastern District of Louisiana, sitting by designation.
** Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 13-20433

Texas law regarding the interpretation of terms within common exclusions of commercial general liability policies, as to which there is no controlling Texas Supreme Court precedent. Accordingly, we decline to make an *Erie* guess and instead certify questions to the Supreme Court of Texas.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO ART. 5, § 3–C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.**

**TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:**

### I. STYLE OF THE CASE

The style of the case is U.S. Metals, Incorporated, Plaintiff–Appellant, v. Liberty Mutual Group, Incorporated, doing business as Liberty Insurance Company, Defendant–Appellee, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Southern District of Texas, Houston Division. Federal jurisdiction over the issues presented in the case is based on 28 U.S.C. § 1332.

### II. STATEMENT OF THE CASE

Exxon Mobil Corporation (Exxon) filed suit against US Metals and Maass Flange Corporation (Maass) in Texas State Court on June 20, 2011. Exxon alleged that US Metals agreed to manufacture to sell to Exxon 350 "ASTM"-standard, weld neck flanges for installation in their Baytown, Texas, and Baton Rouge, Louisiana, refineries in June 2009. These flanges were irreversibly incorporated into "nonroad diesel project" (NRD) facilities by welding and bolting the flanges into unit pipes that were insulated and

buttoned up to the NRD equipment. In June 2010, Exxon discovered a leak in one of the installed flanges while conducting testing before putting the NRD systems into operation. Exxon's subsequent investigation revealed that US Metals had subcontracted out to Maass to manufacture the flanges, and that the flanges had been improperly manufactured against ASTM standards.

Exxon alleged that the only way to mitigate its damages was to order new flanges from a different manufacturer and replace all the flanges supplied by US Metals. Bruce Bellingham, Exxon's corporate representative and refinery project manager, testified that the replacement of the flanges required stripping the temperature coating, removing and damaging the bolts and gaskets, and grinding down millimeters of the pipes. The replacement of the flanges required portions of the refineries to be shut down for several weeks, resulting in the loss of use of the refineries.

In June 2011, Exxon brought suit against US Metals seeking damages for the costs associated with investigating the flange defect, acquiring replacement flanges, removing and replacing the defective flanges, and the resulting loss of use of Exxon's property, and incidental and consequential damages. In August 2011, a settlement was reached between Exxon and US Metals, and the settlement letter between the parties totaled the damage at approximately $6,345,824. For the Baytown Refinery, the costs included labor and material furnished by Exxon, and services, materials, and other costs furnished by contractors. The costs at the Baton Rouge refinery included: replacement flanges and pipe fabrication; subcontractors dismantling, installing, and testing various parts of the flanges; subcontractor providing insulation removal and reinstallation; subcontractor providing bolt tensioning services for flanges; subcontractor providing scaffolding for dismantling and reinstalling flanges; engineering services for flange issues; and overhead/consumables for flange replacement.

No. 13-20433

US Metals claimed coverage with Liberty based on a Commercial General Liability ("CGL") Policy and Umbrella Policy (collectively, the "Policy"), providing coverage from September 2009 to September 2010 for "bodily injury" and "property damage." US Metals requested that Liberty defend and indemnify it in its lawsuit with Exxon, but Liberty denied the request on August 21, 2011.

Liberty denied US Metals's request based on policy exclusions K and M. Under exclusion K, the "your product" exclusion, "property damage" to "your product" arising out of your product or any part of it is excluded from coverage. The policy defines property damage as,

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

As defined by the policy, "your product" includes any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you. Under Exclusion M, "Damage to Impaired Property or Property not Physically Injured" (the "impaired property" exclusion), the policy excludes coverage of

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work."
> (2) A delay or failure by you or anyone acting on your behalf to perform a contractor agreement in accordance with its terms.
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The policy defines "impaired property" as

4

Tangible property, other than "your product" or "your work", that cannot be used or is less useful because

(1) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

(2) You have failed to fulfill the terms of a contract or agreement

If such property can be restored to use by the repair, replacement, adjustment, or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

US Metals brought suit against Liberty on December 8, 2011, in Texas state court alleging Liberty's duty to defend and duty to indemnify US Metals in *ExxonMobil Corporation v. U.S. Metals, Inc. et al.* ("Exxon lawsuit"). Liberty removed the suit to the United States District Court for the Southern District of Texas on February 9, 2012. US Metals's First Amended Complaint alleged, *inter alia*, breach of contract to defend and indemnify. Liberty filed a motion for summary judgment and US Metals filed an amended partial motion for summary judgment on the issue of liability. The district court granted Liberty's motions for summary judgment and denied US Metals's partial motions for summary judgment on July 2, 2013. US Metals appeals, arguing that Liberty had a duty to defend and a duty to indemnify US Metals in the Exxon lawsuit because the policy exclusions did not apply to Exxon's claims.

### III. LEGAL ISSUES

Texas law governs in this diversity suit. To determine Texas law, this court looks first to the final decisions of the Texas Supreme Court. *See Austin v. Kroger, Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014). In the absence of a definite pronouncement from the Texas Supreme Court on an issue, we may certify a question to the Texas Supreme Court. *See id.* Under Texas law, "[t]he Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative

questions of Texas law having no controlling Supreme Court precedent." Tex. R. App. P. 58.1; *see also* Tex. Const. art. V, § 3–c(a).

The resolution of this case turns on two questions of Texas law, neither of which has been directly addressed by the Supreme Court of Texas: (1) whether the terms "physical injury" and "replacement" found in the common "your product" and "impaired property" exclusions are ambiguous; and (2) if not, what do these terms mean pursuant to Texas law?

Under Texas law, ordinary contract principles are applied to insurance policies, which are interpreted as a question of law. *See New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). When terms are defined in the insurance contract, those definitions control. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). Undefined terms are to be given their plain, ordinary, and generally accepted meaning, unless the contract indicates otherwise. *See Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976). If the language of the contract is subject to more than one reasonable interpretation, then the contract is ambiguous and presents a question of law that the court must decide. *See Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) (citing *Continental Cas. Co. v. Warren*, 254 S.W.2d 762 (Tex. 1953). Ambiguously worded exceptions or limitations on liability shall be strictly construed in favor of the insured. *See id.* Courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.*

The "your product" and "impaired property" exclusions are business risk exclusions commonly found within many commercial general liability ("CGL") insurance policies, such as the one at issue in this case. Similar exclusions have been litigated within this circuit as well as others, but there is no Texas

Supreme Court case law interpreting the language of these exclusions. The Texas Supreme Court's interpretation of these terms will have far-reaching implications due to the commonality of these exclusions within CGL policies. As such, the answer to our certified questions will affect a large number of litigants. No Texas court or any other state or circuit court has determined whether the terms "physical injury" or "replacement" found within the "your property" and "impaired property" exclusions are ambiguous. This is purely a question of Texas law, *see Great Am. Ins. Co.*, 236 F.Supp.2d at 693, and would be resolved by the Texas Supreme Court's answer to our first certified question.

The Texas Court of Appeals in Houston has, however, interpreted the meaning of "physical injury" within a similar "your property" exclusion in *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651 (Tex. App.—Houston [14th Dist.] 2006), *abrogated on other grounds by Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010). Liberty used *Lennar* in support of its argument that the incorporation of a defective product standing alone is not "physical injury." *Lennar*, 200 S.W.3d at 678–79. The *Lennar* court held that the mere incorporation of a defective product is not "property damage" to the defective product itself but does not discuss whether damage to other integrated components would be considered "property damage." *See id.*

The Seventh Circuit also interpreted "physical injury" but held that "physical injury" occurred to the other product at the moment of incorporation of the insured's defective product. *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 807–14 (7th Cir. 1992). In its detailed discussion of the drafting history of the "property-damage clause" (similar to the "your property" exclusion) in other form CGL policies, the Seventh Circuit held that "the probable understanding of the parties to liability insurance contracts, persuade[s] us that the incorporation of a defective product into another

product inflicts *physical injury* . . . at the moment of incorporation . . . ." *Id.* at 814 (emphasis added).

We have also found no controlling Texas case law discussing the meaning of "replacement" within the commonly used "impaired property" exclusion, but courts have interpreted the term. A Texas federal district court interpreted "replacement" to include the cost of tearing down other injured components even if the other components were "physically injured" upon the installation of the defective flanges. *See Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F.Supp.2d 628, 641 (S.D. Tex. 2010). The court held that the other components were still "impaired property" because their use was restored upon the replacement of the defective flanges and thus, were excluded from coverage under their duty to indemnify.

We discussed the meaning of a similar "impaired property" exclusion in *Grapevine*, an appeal from the Northern District of Texas, in which we found the "impaired property" exclusion inapplicable to the facts of that case. *Fed. Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 722 (5th Cir. 2000). There, the insured was meant to perform excavation, backfilling, and compacting work in connection with the contractor's construction of a parking lot. *Id.* However, the "select fill materials provided and installed by [the insured] failed to meet specifications and, as a result, [] caused damage to the work of" one of the other subcontractors. *Id.* We compared *Grapevine* to a Michigan case where the insured installed gasoline containment systems that leaked and contaminated the surrounding soil. *See Action Auto Stores, Inc. v. United Capitol Ins. Co.*, 845 F.Supp. 417, 419 (W.D. Mich. 1993). We reasoned in *Grapevine* that, as in *Action Auto*, the asphalt paving could not be "restored to use" by "the repair, replacement, adjustment or removal" of the insured's defective product or work. *Grapevine*, 197 F.3d at 728.

8

No. 13-20433

A district court in Georgia applied the "impaired property" exclusion but interpreted "replacement" to include the other components attached to the insured's defective product. *See Gentry Mach. Works. Inc. v. Harleysville Mut. Ins. Co.*, 621 F. Supp. 2d 1288, 1298 (M.D. Ga. 2008). There, in applying the "impaired property" exclusion, the court held that

> [T]he Policy does not apply to damages to the boiler or its components directly caused by the repairs to the [insured's] pedestals . . . . These parts may have been damaged in the process of their removal, and they often had to be replaced entirely after the repair to the pedestals was complete. Although these boilers sustained damage to component parts other than the pedestals themselves, no coverage exists for these damages as they were not caused directly by pedestal failure but rather were incurred during the repair and/or replacement of the faulty pedestals.

*Id.* at 1298 n.6 (citing references omitted). The *Gentry* court also stated that Georgia "follows the majority position" when it comes to analysis of the business risk exclusions in CGL policies. *Id.* at 1294.

There is no controlling Texas Supreme Court case law determining whether "physical injury" or "replacement" are ambiguous, nor is there controlling case law interpreting these terms. Thus, we look to the Texas Supreme Court to answer our certified questions. These are issues that have been, and will likely continue to be, the subject of far-reaching insurance litigation in this circuit and others.

## IV. QUESTIONS CERTIFIED

We hereby certify the following questions of law to the Supreme Court of Texas:

1. In the "your product" and "impaired property" exclusions, are the terms "physical injury" and/or "replacement" ambiguous?

2. If yes as to either, are the aforementioned interpretations offered by the insured reasonable and thus, must be applied pursuant to Texas law?

9

No. 13-20433

3. If the above question 1 is answered in the negative as to "physical injury," does "physical injury" occur to the third party's product that is irreversibly attached to the insured's product at the moment of incorporation of the insured's defective product or does "physical injury" only occur to the third party's product when there is an alteration in the color, shape, or appearance of the third party's product due to the insured's defective product that is irreversibly attached?

4. If the above question 1 is answered in the negative as to "replacement," does "replacement" of the insured's defective product irreversibly attached to a third party's product include the removal or destruction of the third party's product?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.

* * *

QUESTIONS CERTIFIED.