ACCEPTED
03-15-00378-CV
8148155
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/8/2015 6:00:03 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-00378-CV

## JAMES HANSEN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/8/2015 6:00:03 PM
JEFFREY D. KYLE
Clerk

## v.

## LONNIE ROACH and
## BEMIS, ROACH & REED

---

## APPELLANT'S REPLY BRIEF

---

Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com
KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax)

Oral Argument Requested

# TABLE OF CONTENTS

Table Of Contents i

Index To Authorities ii

Caption 1

Argument & Authorities 1

 *De Novo Review* 2

 *Roach's Brief Contains Red Herring Arguments* 2

 *The "Business" Continued Under The Texas Business Organizations Code* 5

 *Hansen Did Not "End The Business" When He Could No Longer Perform Surgery* 9

 *Construction Of The Policy Supports Coverage* 10

 *Breach Of Contract By Northwestern Mutual Nullifies Its Contractual Defenses* 12

Conclusion 13

Prayer 15

Certificate Of Compliance With TRAP 9.4 15

Certificate Of Service 16

# INDEX OF AUTHORITIES

## Cases

*City of Houston v. Williams*, 353 S.W.3d 128,
141 (Tex. 2011)     6

*Continental Casualty Company v. Warren*,
254 S.W.2d 762, 763     10

*FFE Transportation Services, Inc. v. Fulgham*,
154 S.W.3d 84 (Tex. 2004)     2

*Gulf Insurance Company v. Parker Products, Inc.*,
498 S.W.2d 676, 679 (Tex. 1973)     10

*Markel Insurance Company v. Muzyka*,
293 S.W.3d 380, 385 (Tex. App.—
Ft. Worth 2009, no pet.)     12

*Mead v. Johnson Group, Inc.*, 615 S.W.2d 685,
689 (Tex. 1981)     13

## Statutes

TEX. BUS. ORG. CODE.     5, 6

No. 03-15-00378-CV

JAMES HANSEN

v.

LONNIE ROACH and
BEMIS, ROACH & REED

---

## APPELLANT'S REPLY BRIEF

---

Appellant James Hansen ("Hansen") files this Appellant's Reply Brief.

### ARGUMENT & AUTHORITIES

Despite Roach's attempts to claim to the contrary, the only issue before the court is whether Roach's negligence was the proximate cause of harm to Hansen. The defendants have admitted negligence in failing to timely perfect the appeal in the underlying case. Did that admitted failure cause harm to Hansen? The answer is undoubtedly "yes." The question is whether this Court

would have reversed the underlying case if Roach had properly perfected the appeal, and that is a question of law.

*De Novo* Review

The facts of the underlying case were undisputed—the parties in that case stipulated to the facts. A trial court's application of the law is reviewed *de novo* and is not entitled to any deference. *FFE Transportation Services, Inc. v. Fulgham,* 154 S.W.3d 84 (Tex. 2004). The issue before this court, in determining if Roach's negligence in failing to properly perfect the appeal was a proximate cause of harm to Hansen, is to decide if the trial court in the underlying case properly applied the law in denying benefits under the Disability Office Expense policy ("the DOE policy") after Hansen surrendered his medical license and had not completed the winding up of his business. The Court makes this review *de novo.*

*Roach's Brief Contains Red Herring Arguments*

Roach spent a significant portion of his brief in this Court in a transparent attempt to make Hansen appear unworthy of this

2

Court's consideration. Those matters are irrelevant to the issue before the court. Roach emphasized that Hansen had malpractice cases pending against him. That was certainly not a defense to any claim by Northwestern Mutual in the underlying case, and it is no defense in this case nor is it in any way relevant. Does the fact that Hansen had malpractice cases pending against him mean that Hansen (who had paid premiums for years on the DOE policy) is not entitled to recover on the DOE policy? Certainly not. Nevertheless, Roach insists on highlighting that circumstance for the Court, although it is totally irrelevant to any issue before the Court.

Roach emphasized that Hansen had a complaint pending at the Medical Board at the time Hansen surrendered his medical license. Roach also pointed out that Northwestern Mutual made a settlement offer of $75,000.00. Those facts have no bearing whatsoever on whether Hansen's ongoing expenses were within coverage of the policy. The only possible purpose for Roach arguing those facts in his brief were an attempt to cast Hansen as somehow unworthy of a recovery. As the insured who paid his

premiums for years and was admittedly totally disabled, Hansen was most certainly not unworthy of a recovery.

Roach goes into detail about Hansen being unable to perform surgery following his injury, not seeing patients following the injury, notifying patients that he was closing his practice, etc. Those facts might have been relevant evidence that Hansen "ended" his practice on the date of his injury, but both the trial court in the underlying case and the trial court in this case properly rejected that conclusion. So why does Roach spend any time in his brief on those issues? Again, it is simply a transparent attempt to argue that Hansen is simply unworthy of any recovery, and should have no bearing on this court's ruling.

The issue before this Court is one of law—were the ongoing expenses (which were stipulated in the underlying case) covered expenses under the policy of insurance after Hansen surrendered his medical license. That is a question of law and simply requires the correct application of law to the undisputed facts.

The undisputed facts are that Hansen had ongoing expenses that exceeded the maximum monthly benefit for the entire period

of coverage. Roach argues several times in his brief that Hansen wanted to keep the business going to repay the $758,313.51 loan Hansen made to the P.A. But the particular elements of the "covered" overhead expense is not relevant—in the underlying case the parties stipulated that the *covered expenses* exceeded the maximum monthly benefit for the entire time that coverage was available. Roach argues that Hansen could just keep one account open and receive benefits indefinitely. That bugbear is nothing other than a red herring. Accounts receivable are not covered by the DOE policy. What is covered are expenses, including rent and payroll expenses, and those were stipulated to exceed the maximum benefit. This would be so whether there were any accounts receivable or not. Roach's argument is completely foreclosed by the stipulation in the underlying case because it was agreed that the "covered expenses" would exceed the monthly maximum for every month benefits were payable.

*The "Business" Continued Under The Business Organizations Code*

Roach argues that the Texas Business Organizations Code has no application in this case. Roach's theory is that the Texas

Business Organizations Code has no application because the Code was not specifically mentioned in the contract of insurance. When a contract is entered into in Texas, it is subject to the laws of the State in existence at the time. *City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011). The Texas Business Organizations Code was part of the laws of Texas, and to the extent provisions of that code could impact the insurance contract between the parties, it was applicable without any mention or incorporation into the insurance contract. Taking Roach's argument to its logical (or, more accurately, illogical) conclusion, an insurer would not be subject to the Deceptive Trade Practices Act or the Insurance Code unless those statutes were specifically incorporated by reference in the policy of insurance. That is not the law, and cannot logically be the law.

The Texas Business Organizations Code applies to the facts of this case. As discussed in Hansen's Appellant's Brief, when Hansen surrendered his medical license, that was an event requiring the winding up of Austin Neurosurgical. By statute, Austin Neurosurgical had to "cease to carry on its business, *except*

*to the extent necessary to wind up its business."* By that very provision, the business does carry on to the extent necessary to wind up its business. At that point the winding up of the business is the "continuing operation of the business." The trial court's conclusion of law that Hansen's entitlement to monthly benefits ended on April 8, 2011, is therefore an incorrect application of the law to the undisputed facts. As a matter of law and fact, the "business" continued in existence for the period necessary to wind up the business's affairs and that continued past April 8, 2011.

The trial court also concluded as a matter of law that "collection of accounts receivable did not constitute the "continuing operation of the Insured's business" within the plain meaning of the applicable provisions of the insurance policy between Northwestern Mutual Life Insurance Company and Plaintiff." The trial court was incorrect in that conclusion of law since collection of accounts receivable is part of the winding up process and therefore part of the continuing operation of Hansen's business in the winding up period. Additionally, payment of the ongoing expenses (such as the lease obligation, payroll expenses,

medical record maintenance, etc.) is most certainly part of the ongoing operation of the business during the winding up period.

Roach argues that the court cannot allow Hansen to recover the benefits due to the continuation of the business during the winding up process because a physician practicing as an individual might not be able to make the same argument. That is simply a false argument. That "individual physician" might or might not be able to receive benefits, but the Court is not faced with that circumstance or the particular facts applicable to that hypothetical "individual physician." The Court must restrict its analysis to the facts of this case—the surrender of Hansen's medical license was an event of termination of the professional association beginning the winding up period of Austin Neurosurgical. During the winding up period, the business continues for that winding up purpose, and the expenses in that continued operation were covered by the DOE policy.

*Hansen Did Not "End The Business" When He Could No Longer Perform Surgery*

Roach argues that the benefits ended when Hansen ended his *professional practice.* Under that flawed approach, the benefits would have terminated on the date of Hansen's injury, since he could not operate after that date and never saw a patient after that date. Roach successfully argued against that position in the underlying case, and neither the court in that case nor the trial court in this case accepted that as the date Hansen "ended the business."

Roach argues on page 21 of his brief that Hansen has omitted an important provision found in the Definitions Section of the Disability Overhead Expense Supplement, and then quotes that provision from the supplement. What Roach does not point out to the Court is that the Supplement does not replace the policy but only purports to explain it.

> You will find the following information of value to you if you are totally or partially disabled and wish to claim benefit under a Northwestern Mutual Disability Overhead Expense Policy. This form explains the terms used but it does not replace the policy.

Please refer to the policy if you are in doubt....

The policy itself defines the term "business." "Business" means "the Insured's business or the Insured's professional practice at the time disability starts." As pointed out in the Supplement, the language in the policy controls over that of the Supplement.

*Construction Of The Policy Supports Coverage*

A policy of insurance must be strictly construed against the insurer and in favor of the insured, and any reasonable interpretation of a policy provision must be indulged in favor of the insured and coverage. *Gulf Insurance Company v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex. 1973). The Court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not by itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Continental Casualty Company v. Warren,* 254 S.W.2d 762, 763 (Tex. 1953).

The Court must interpret the termination provision in favor of providing coverage, if any reasonable interpretation will do so.

Interpreting the policy as Roach does now denies coverage; interpreting the policy as Hansen does provides coverage. A reasonable interpretation of the termination provision is that if either the insured's "business or professional practice" is not ended during disability, the coverage is not terminated. While the injury ended Hansen's professional practice, it did not end the business at that time. The "business" was Austin Neurosurgical, and that business continued through the period of winding up, as a matter or law.

Neither the court in the underlying case nor the trial court in this case specifically found that Hansen "ended" the business during the period of disability. Both found that he "closed" the business on April 8, 2011, and that terminated the right to benefits. Roach criticizes Hansen's discussion of the definitions of "close" and "end" in his opening brief, stating that "[d]efinitions for these common words are unnecessary and represent an attempt to divert this Court's focus from the key issue in this case." But words have meaning, and there is a difference between the definitions of "close" and "end." The definition of "end" is to "bring

to an end" and "come or bring to a final point, finish." "Close" is "to suspend or stop the operations" or to "cease to be in operation or accessible to the public." The business (Austin Neurosurgical) may have closed, but it had not ended until the period of winding up had been concluded. Terms in an insurance contract will be given their ordinary meaning unless the policy shows that the words were meant in a technical or different sense. *Markel Insurance Company v. Muzyka,* 293 S.W.3d 380, 385 (Tex. App.— Ft. Worth 2009, no pet.). Much as Roach now wants to argue otherwise, interpreting the policy liberally in favor of coverage (as the Court must do), and using common ordinary definitions, results in the conclusion that the trial court in the underlying case got the result wrong, and this court would have reversed that judgment if the appeal had been properly perfected.

*Breach Of Contract By Northwestern Mutual Nullifies Its Contractual Defenses*

The trial court in the underlying case found that Northwestern Mutual breached the contract by refusing to pay benefits when due. When one party to a contract commits a

material breach of the contract, the other party is excused from any further obligation to perform. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex. 1981). The trial court in the underlying case found that Hansen was entitled to benefits from the time of injury until he surrendered his medical license, so maintaining that license was what Hansen had to do to maintain the right to benefits. However, he was excused from the obligation to maintain that license by Northwestern Mutual's breach of the contract. As much as Roach wants to mischaracterize Hansen's argument in his opening brief, the result is that simple. Upon Northwest Mutual's breach of the contract, Hansen was under no obligation to further perform any act under the contract, and was entitled to the full contract benefits.

## CONCLUSION

If Roach had not negligently failed to perfect the appeal in the underlying case, this Court would have reversed the trial court in the underlying case. As a matter of law, Hansen did not "end the business" when he surrendered his medical license. By statute, the "business" continued for the period of winding up, and

13

that was the "continued operation of the business" under a liberal interpretation of the policy. Both factually and legally, the business continued in existence for that period, and it was stipulated that the "covered expenses" would exceed the maximum monthly benefit for the entire period of coverage.

Northwestern Mutual breached the contract of insurance, and from that period forward could not insist on any action by the insured necessary to comply with the policy. Hansen was therefore not required to maintain his medical license in order to continue to receive benefits.

If this Court had heard the appeal of the underlying case, it would have reversed the judgment of the trial court and rendered judgment for Hansen for the full amount of the unpaid benefits plus penalty interest. Therefore, the trial court in the present case erred in holding that Roach's admitted negligence in failing to timely perfect the appeal was not a proximate cause of Hansen's loss.

# PRAYER

Wherefore, Hansen prays that the Court reverse the judgment of the trial court and render judgment for Hansen for the full amount of his damages, and for such other relief to which he may show himself justly entitled.

KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax)

/s/Scott R. Kidd
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

Certificate of Compliance with TRAP 9.4(i)(3)

This brief contains a total of 2487 words excluding the parts exempted under TRAP 9.4(i)(1), as verified by Microsoft Word for Mac. This brief is therefore in compliance with TRAP 9.4(i)(2)(B).

/s/Scott R. Kidd

## Certificate of Service

A copy of this brief has been served on John Shepperd, 909 Fannin Street, Suite 3300, Houston, TX 77010 in accordance with the Texas Rules of Appellate Procedure this 8th day of December, 2015.

/s/Scott R. Kidd